E-filing

1  J. WESLEY SMITH (State Bar No. 172878)
   GARY A. WATT (State Bar No. 191265)
2  CHRISTOPHER T. LUSTIG (State Bar No. 233338)
   McNAMARA, DODGE, NEY, BEATTY, SLATTERY,
3  PFALZER, BORGES & BROTHERS LLP
   1211 Newell Avenue
4  Post Office Box 5288
   Walnut Creek, CA 94596
5  Telephone: (925) 939-5330
   Facsimile: (925) 939-0203
6  wesley.smith@mcnamaralaw.com

7  Attorneys for Defendant
   MERCARI, INC. dba UNISHIPPERS
8

**FILED**

OCT – 5 2009

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

ADR

9                  UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11  MERCARI, INC. dba UNISHIPPERS,          Case No. **C09-04726 MHP**

12                      Plaintiff,           **COMPLAINT FOR DAMAGES,**
13                                           **RESTITUTION AND INJUNCTIVE**
                       vs.                   **RELIEF**
14
   JUSTIN BEGET, an individual,             **DEMAND FOR JURY TRIAL**
15  MATTHEW WALSH, an individual,
   FIRST STREET CAPITAL, LLC, dba DC        **(1)  Civil RICO (18 U.S.C. § 1962(c))**
16  EAST FREIGHT, UNISHIPPERS, a            **(2)  Civil RICO (18 U.S.C. § 1962(d))**
   Maryland limited liability company, ERIN **(3)  Computer Fraud and Abuse Act (18**
17  BREEN, an individual, MONKEY            **U.S.C. § 1030)**
   LOGISTICS, LLC, a Nevada company,        **(4)  Lanham Act (15 U.S.C. § 1125)**
18  MOLGER, INC. dba DNA FREIGHT, a         **(5)  Unauthorized Access to Computers,**
   California corporation, NEWBURYPORT      **Computer Systems and Data (Cal. Pen. Code**
19  COMPANIES, a Maryland entity of         **§ 502)**
   unknown form, VOXX SERVICES, LLC, a      **(6)  Fraud – Intentional Misrepresentation**
20  Maryland entity of unknown form,        **(7)  Fraud – Negligent Misrepresentation**
   MOVEMENT LOGISTICS, a Maryland           **(8)  Fraud - Concealment**
21  entity of unknown form, STEFAN          **(9)  Fraud – Promise Made Without**
   TRIANDAFILOU, an individual, and         **Intention to Perform**
22  DOES 1-10,                              **(10) Misappropriation of Trade Secrets**
                                            **(Cal. Civil Code §§ 3426-3426.10)**
23                     Defendants.          **(11) Conversion**
                                            **(12) Breach of Contract Against Employees**
24                                          **(13) Breach of Covenant of Good Faith and**
                                            **Fair Dealing**
25                                          **(14) Breach of Duty of Loyalty**
                                            **(15) Breach of Contract Against Franchisee**
26                                          **(16) Intentional Interference With**
                                            **Contractual Relations**
27                                          **(17) Intentional Interference With**
                                            **Prospective Economic Advantage**
28                                          **(18) Negligent Interference With**

COMPLAINT FOR DAMAGES, RESTITUTION
AND INJUNCTIVE RELIEF

McNAMARA, DODGE, NEY, BEATTY, SLATTERY, PFALZER, BORGES & BROTHERS LLP
ATTORNEYS AT LAW
P.O. BOX 5288, WALNUT CREEK, CA 94596
TELEPHONE: (925) 939-5330

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Prospective Economic Advantage**
**(19)  Unfair Business Practices (Cal. Bus &**
**Prof. Code § 17045)**
**(20)  Unfair Competition (Cal. Bus & Prof.**
**Code § 17200)**
**(21)  Trade Libel**
**(22)  Slander**
**(23)  Conspiracy**
**(24)  Injunctive Relief**

## INTRODUCTION

1.      Plaintiff, Mercari, Inc. dba Unishippers ("Plaintiff" or "Mercari"), a third party logistics shipping and freight reseller, brings this action against two of its former employees, several competitors and others for damages in excess of ONE MILLION DOLLARS ($1,000,000), restitution and injunctive relief stemming from the Defendants' theft and diversion of nearly seventy-five (75) of Plaintiff's customer accounts through the unlawful use of interstate mails and communications, transmission of stolen property, computer sabotage, conspiracy, fraud, misappropriation of confidential customer lists, defamation, etc.

## JURISDICTION

2.      The Court has jurisdiction over the claims for relief arising under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, et seq., the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, et seq., and the Lanham Act, 15 U.S.C. § 1125. As a result, this Court has original jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1337. Pursuant to 28 U.S.C. § 1367(a), supplemental jurisdiction exists over the related state claims which arise from the same nucleus of operative facts giving rise to this dispute.

3.      This Court may exercise personal jurisdiction over non-resident Defendants because jurisdiction is proper under California's long-arm statute (Cal. Code Civ. Proc. section 410.10) and that exercise accords with federal constitutional due process principles. This Court may exercise general personal jurisdiction over Defendants as a result of Defendants' substantial, continuous and systematic contacts with the State of California as herein alleged. In addition, this Court may exercise specific personal jurisdiction over the each of the out of state Defendants, and as alter-egos, agents and parent-subsidiaries of one another, because each has purposefully

COMPLAINT FOR DAMAGES, RESTITUTION          2
AND INJUNCTIVE RELIEF

McNAMARA, DODGE, NEY, BEATTY, SLATTERY, PFALZER, BORGES & BROTHERS LLP
ATTORNEYS AT LAW
P.O. BOX 5288, WALNUT CREEK, CA 94596
TELEPHONE: (925) 939-5330

1   directed its activities at forum residents and purposefully availed themselves of the privilege of

2   conducting activities in California or otherwise established contacts with the forum state, from

3   which these claims have arisen, by, among other acts, using interstate mail, telephone or wire

4   services in conspiring and agreeing with Co-Defendant residents of this state for the purposes,

5   and with the foreseeable effect, of intentionally causing injuries in this state to Plaintiff, a forum

6   resident, as herein alleged. Additionally, Plaintiff is informed and believes and based thereon

7   alleges that as many as twenty-five (25) of the approximately seventy-five (75) customer accounts

8   which were interfered with, or stolen from, Plaintiff, and were subsequently solicited and serviced

9   by Defendants, related to customers located, and services provided, in California.

10   ## VENUE

11   4.       Venue is proper in the United States District Court, Northern District of California,

12   pursuant to 28 U.S.C. § 1391 because (i) Defendant Molger Inc. dba DNA Freight is and was at

13   all times alleged herein a resident of and doing business in San Mateo County, California which is

14   located in the Northern District of California of the above-entitled Court ("District"), (ii) a

15   substantial part of the events giving rise to the claims asserted herein occurred, and continue to

16   occur, within this judicial district, and (iii) Defendants' tortuous conduct was directed primarily

17   against Plaintiff's "San Francisco Territory" which includes Plaintiff's existing, former and

18   prospective customers that manage shipping operations out of the City and County of San

19   Francisco.

20   ## INTRADISTRICT ASSIGNMENT

21   5.       Pursuant to Civil L.R. 3-2(d), this action is properly assigned to either the San

22   Francisco or Oakland Divisions of the Northern District of California because a substantial part of

23   the events giving rise to the claims asserted herein occurred within San Mateo and San Francisco

24   Counties.

25   ## UNISHIPPERS GLOBAL LOGISTICS, LLC

26   6.       Unishippers Global Logistics, LLC ("Unishippers Global" or "Franchisor") is, and

27   at all times herein mentioned was, a company organized and existing under the laws of the State

28   of Delaware with its principal place of business in Salt Lake City, Utah. Unishippers Global

COMPLAINT FOR DAMAGES, RESTITUTION          3
AND INJUNCTIVE RELIEF

1 franchises its expedited shipping and freight business concept, and correspondingly licenses the
2 use of the Unishippers' trademarks to franchisees throughout the United States. Unishippers
3 Global's interstate network of franchises is made up of approximately 270 franchises, which
4 market and resell shipping and freight services of other companies to approximately 75,000
5 Unishipper customers.

6 7. Since the shipping and freight reselling business is inherently interstate and
7 transitory, and many customers are businesses with multiple locations and outlets, "Local
8 Franchisees" are assigned "marketing" territories within which they enjoy exclusive Unishippers
9 marketing rights to customers located in those areas. Unishippers Global and the franchisees use
10 a password protected computer database system called "UONE" to, among other things, track
11 different franchisees' customers and accounts. This territorial system is intended to avoid
12 problems that might arise from Local Franchisees competing against one another for the same
13 customers.

## PARTIES

15 8. Plaintiff Mercari is a California corporation with a principal place of business in
16 Fresno, California. Plaintiff is a Franchisee of Unishippers Global and, pursuant to its franchise
17 agreement with Unishippers Global, enjoys exclusive marketing rights to service customers with
18 shipping headquarters located in certain regions of California including the City and County of
19 San Francisco ("San Francisco Territory"), the County of Fresno, and the Cities of Stockton and
20 Modesto.

21 9. Plaintiff has resided in the City of Fresno for approximately six (6) years and at all
22 times has enjoyed a good reputation both generally and in its industry.

23 10. Defendant Justin Beget ("Defendant" or "Beget") is, and at all times herein
24 mentioned was, either a resident of Fresno, Fresno County, California or San Diego, San Diego
25 County, California. From September 26, 2005 to May 29, 2009, Beget was a salesperson and
26 employee of Plaintiff whose duties included building a book of business by contacting and
27 developing sales leads and closing sales and providing ongoing service to Plaintiff's clients with
28 the support of Plaintiff's central customer service staff. Beget was compensated with an annual

COMPLAINT FOR DAMAGES, RESTITUTION    4
AND INJUNCTIVE RELIEF

1    salary as well as commissions. (See, Exhibit "A", Beget's Written Offer Letter and Employee

2    Acknowledgement.) Plaintiff is informed and believes and thereon alleges that Beget is currently

3    employed by Defendant Molger, Inc. dba DNA Freight.

4    11.    Defendant Matthew Walsh ("Defendant" or "Walsh") is, and at all times herein

5    mentioned was, a resident of either Clovis, Fresno County, California or Fresno, Fresno County,

6    California. From January 30, 2007 to June 8, 2009, Walsh was a salesperson and employee of

7    Plaintiff whose duties included building a book of business by contacting and developing sales

8    leads and closing sales and providing ongoing service to Plaintiff's clients with the support of

9    Plaintiff's central customer service staff. Walsh was compensated with an annual salary as well

10    as commissions. (See, Exhibit "B", Walsh's Written Offer Letter and Employee

11    Acknowledgement.) Plaintiff is informed and believes and thereon alleges that Walsh is currently

12    employed by Defendant Molger, Inc. dba DNA Freight.

13    12.    Plaintiff is informed and believes and based thereon alleges, that Defendant First

14    Street Capital, LLC dba DC East Freight, Unishippers ("Defendant" or "First Street Capital")

15    was, at all times herein mentioned, a limited liability company, organized and existing under the

16    laws of the State of Maryland with its principal place of business in Bethesda, Maryland. First

17    Street Capital was formerly, and at all relevant times, a franchisee of Unishippers. Plaintiff is

18    informed and believes that, at all times herein mentioned, First Street Capital was not qualified to

19    do business in California.

20    13.    Plaintiff is informed and believes and based thereon alleges, that at all times herein

21    mentioned, Defendant Erin Breen ("Defendant" or "Breen") was an owner, officer, director, agent

22    and employee of First Street Capital and directly ordered, authorized or participated in First Street

23    Capital's tortuous conduct as alleged in this Complaint, and in doing the things herein alleged,

24    was acting within the course and scope of such agency and employment and with the permission

25    and consent of First Street Capital. Plaintiff is informed and believes and based thereon alleges,

26    that at all times herein mentioned, Breen is and was a resident of Maryland. Plaintiff is informed

27    and believes and based thereon alleges that on or about January 22, 2009, Breen and First Street

28    Capital entered into a franchise agreement with Unishippers Global by which Breen and First

COMPLAINT FOR DAMAGES, RESTITUTION        5
AND INJUNCTIVE RELIEF

McNAMARA, DODGE, NEY, BEATTY, SLATTERY, PFALZER, BORGES & BROTHERS LLP
ATTORNEYS AT LAW
P.O. BOX 5288, WALNUT CREEK, CA 94596
TELEPHONE: (925) 939-5330

Street Capital enjoyed non-exclusive marketing rights to the Washington, D.C. area.

14. Plaintiff is informed and believes and based thereon alleges, that at all times herein mentioned, Breen treated First Street Capital as his "alter ego", that there existed a unity of interest and ownership between Breen and First Street Capital such that the separate personalities of Breen and First Street Capital do not exist, and that Breen failed to respect First Street Capital's separate identity by his: failure to capitalize or otherwise complete formation of the company, use of the corporate entity as a mere shell, use of corporate assets as his own, failure to maintain arms length transactions among related entities, use of the corporate entity to procure labor, services or merchandise for other entities, use of the corporate entity as a subterfuge for illegal transactions, concealment or misrepresentation of personal business activities, and failure to observe corporate formalities. Furthermore, it would sanction a fraud or promote an injustice to uphold the corporate entity and allow Breen to escape personal liability for his debts and tortuous conduct herein alleged.

15. Plaintiff is informed and believes and based thereon alleges, that Defendant Monkey Logistics, LLC ("Defendant" or "Monkey Logistics") is a limited liability company organized and existing under the laws of the State of Nevada. Its principal place of business is San Diego, California. Justin Beget is the managing member of Monkey Logistics. Monkey Logistics' Articles of Organization were filed with the Nevada Secretary of State's Office on or about May 20, 2009. Plaintiff is informed and believes and based thereon alleges, that Monkey Logistics was set up and organized by Beget, in concert with Defendants acting as agents of one another, while he was still employed by Plaintiff, in order to solicit, divert and siphon off Plaintiff's customers away from Plaintiff and to itself and Plaintiff's competitors, and in order to directly compete against Plaintiff. Plaintiff is further informed and believes that at all times herein mentioned, Monkey Logistics, LLC was not qualified to do business in California.

16. Plaintiff is informed and believes and based thereon alleges, that at all times herein mentioned, Beget treated Monkey Logistics as his "alter ego", that there existed a unity of interest and ownership between Beget and Monkey Logistics such that the separate personalities of Beget and Monkey Logistics do not exist, and that Beget failed to respect Monkey Logistic's separate

COMPLAINT FOR DAMAGES, RESTITUTION       6
AND INJUNCTIVE RELIEF

1    identity by his: failure to capitalize or otherwise complete formation of the company, use of the

2    corporate entity as a mere shell, use of corporate assets as his own, use of the corporate entity to

3    procure labor, services or merchandise for other entities, use of the corporate entity as a

4    subterfuge for illegal transactions, concealment or misrepresentation of personal business

5    activities, and failure to observe corporate formalities. Furthermore, it would sanction a fraud or

6    promote an injustice to uphold the corporate entity and allow Beget to escape personal liability

7    for his debts and tortuous conduct herein alleged.

8    17.    Defendant Molger, Inc. dba DNA Freight ("Defendant" or "Molger") is, and all

9    times herein mentioned was, a corporation organized and existing under the laws of the State of

10   California with its principal place of business in the City of South San Francisco, San Mateo

11   County, California. Molger is also third party logistics shipping and freight reseller that

12   frequently competes for customers with Unishippers franchisees including Plaintiff.

13   18.    Plaintiff is informed and believes and based thereon alleges, that Newburyport

14   Companies ("Defendant" or "Newburyport") is also known as Newburyport and is a Maryland

15   entity of unknown form with its principal place of business in Gaithersburg, Maryland. Upon

16   information and belief, Newburyport is a holding company that purports to seek out investment

17   opportunities and provide direct control-oriented equity investments to a portfolio of companies.

18   Plaintiff is informed and believes and based thereon alleges that Newburyport served as Breen

19   and First Street Capital's agent by, among other things, providing accounting services and other

20   support to Breen and First Street Capital.

21   19.    Plaintiff is informed and believes and based thereon alleges, that Voxx Services,

22   LLC ("Defendant" or "Voxx") is also known as Voxx Environmental Services, and is a Maryland

23   entity of unknown form with its principal place of business in Gaithersburg, Maryland. Upon

24   information and belief, Voxx is a mold remediation concern and division of Newburyport.

25   20.    Plaintiff is informed and believes and based thereon alleges, that Movement

26   Logistics ("Defendant" or "Movement") is a Maryland entity of unknown form with its principal

27   place of business in Gaithersburg, Maryland. Upon information and belief, Movement is a third

28   party logistics shipping and freight reselling company and also a division of Newburyport.

COMPLAINT FOR DAMAGES, RESTITUTION          7
AND INJUNCTIVE RELIEF

MCNAMARA, DODGE, NEY, BEATTY, SLATTERY, PFALZER, BORGES & BROTHERS LLP
ATTORNEYS AT LAW
P.O. BOX 5288, WALNUT CREEK, CA 94596
TELEPHONE: (925) 939-5330

1    21.    Plaintiff is informed and believes and based thereon alleges, that at all relevant

2    times, Stefan Triandafilou ("Defendant" or "Triandafilou") is the Principal of Newburyport as

3    well as President of Voxx. Plaintiff is further informed and believes and based thereon alleges,

4    that Triandafilou is a former, and possibly current, partner and associate of Breen.

5    22.    Plaintiff is informed and believes and based thereon alleges, that at all times herein

6    mentioned, Triandafilou treated Newburyport, Voxx and Movement as his "alter ego", that there

7    existed a unity of interest and ownership between Triandafilou, Newburyport, Voxx and

8    Movement such that the separate personalities of Triandafilou, Newburyport, Voxx and

9    Movement do not exist, and that Triandafilou failed to respect each entity's separate identity by

10   his: failure to capitalize or otherwise complete formation of the companies, use of the corporate

11   entities as mere shells, use of corporate assets as his own, failure to maintain arms length

12   transactions among related entities, use of the corporate entities to procure labor, services or

13   merchandise for other entities, use of the corporate entities as a subterfuge for illegal transactions,

14   and failure to observe corporate formalities. Furthermore, it would sanction a fraud or promote

15   an injustice to uphold the corporate entities and allow Triandafilou to escape personal liability for

16   his debts and tortuous conduct.

17   23.    Plaintiff is informed and believes and based thereon alleges, that at all times herein

18   mentioned, each of the Defendants was the agent, servant and employee of each of the remaining

19   Defendants, and in doing the things hereinafter alleged, was acting within the course and scope of

20   such agency and employment and with the permission and consent of his/its Co-Defendants.

21   24.    Plaintiff is ignorant of the true names and capacities of the Defendants sued herein

22   as DOES 1-10, inclusive, and therefore sues these Defendants by such fictitious names. Plaintiff

23   will amend this complaint to allege their true names and capacities when ascertained. Plaintiff is

24   informed and believes and based thereon alleges, that each of the fictitiously named Defendants is

25   responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages as

26   herein alleged were proximately caused by their conduct.

27   ///

28   ///

COMPLAINT FOR DAMAGES, RESTITUTION          8
AND INJUNCTIVE RELIEF

1

## FACTUAL BACKGROUND

2      25.    As a third party logistics shipping and freight reseller, Plaintiff links its shipping

3   and freight customers, primarily businesses, to interstate and international shipping and freight

4   services according to their specific needs. Plaintiff employs salespersons who are responsible for

5   soliciting new customers and developing ongoing relationships with customers in order to

6   continue providing third party logistics services. Plaintiff's customer support personnel provide

7   both customers and salespersons with support by maintaining and allowing limited access to its

8   search tool, "Freight Manager", which links customers to shipping and freight services. The third

9   party logistics shipping and freight reselling industry is extremely competitive and developing

10   and maintaining relationships with customers and generating customer loyalty requires detailed

11   knowledge and information regarding those customers in order to provide them special services

12   such as discount pricing.

13      26.    As with all Unishippers Global franchisees, Plaintiff's customer account

14   information is, and at all relevant times was, maintained in two separate computer databases,

15   "UONE" and "Freight Manager". UONE is maintained by the Franchisor and franchisees to track

16   different franchisees' customers and accounts. The database is password protected. It has a

17   limited amount of customer information, including but not limited to, customer names, contact

18   information, account history information, pricing information and accounts receivable status,

19   much of which is only accessible by Unishippers Global and the Local Franchisee servicing the

20   account. One of the functions that UONE serves is for franchisees to verify whether a particular

21   prospective customer already has an account through another franchisee.

22      27.    "Freight Manager" is a separate computer database system that existing customers

23   from across the nation access for the purpose of placing shipping and freight orders. Freight

24   Manager enables customers to obtain multiple quotes in seconds, compare costs and timing,

25   manage and track inbound and outbound freight, convert quotes to bills of lading, create

26   customized reports, receive consolidated invoices and access support from Unishippers

27   franchisees anytime, anywhere.

28      28.    The Freight Manager computer database system is also the primary tool that Local

COMPLAINT FOR DAMAGES, RESTITUTION      9
AND INJUNCTIVE RELIEF

McNAMARA, DODGE, NEY, BEATTY, SLATTERY, PFALZER, BORGES & BROTHERS LLP
ATTORNEYS AT LAW
P. O. BOX 5288, WALNUT CREEK, CA 94596
TELEPHONE: (925) 939-5330

1 Franchisees use to access and manage their customer accounts. Franchisees manually store,

2 access and maintain detailed information about their customers within Freight Manager including,

3 but not limited to, customers' names, contacts' names, contacts' information, customers' shipping

4 and freight preferences, and customers' pricing and billing preferences. Freight Manager also

5 compiles and stores detailed information regarding customers' shipping and freight volume, costs,

6 margins, patterns and history which is accessible only to the Local Franchisee holding the

7 account. Just as with UONE, access to and through the Freight Manager computer database is

8 password protected and Local Franchisees are only able to view detailed customer and account

9 information for their own customers and accounts.

10     29.     On or about October 22, 2008, Unishippers Global issued a "Shared Account

11 Policy" in order to address situations where one franchisee has unique access to a *prospective*

12 customer located in another local franchisee's exclusive marketing territory. The stated purpose

13 of the policy is to "enable and encourage maximum growth in the Unishippers system." The

14 Shared Account Policy explicitly defines the "Local Franchisee" as the "Franchisee with the

15 shipping location of an account in UONE in its territory. If no shipping location is in UONE, the

16 Franchisee with the billing location in UONE will be the Local Franchisee." (See, Exhibit "C",

17 Unishippers Global's "Shared Account Policy".)

18     30.     The Shared Account Policy is part of the policies and procedures in the Operations

19 Manual of Unishippers Global Logistics, LLC, as referenced in the Unishippers Franchise

20 Agreement. To set up a shared account, the franchisee pursuing the prospect must first confirm

21 the account is not an active Unishippers customer, and then complete and send to the Franchisor

22 an account request form. Once the shared account is set up, a default margin split of 90/10 is

23 used to distribute the paid gross margin between the franchisee that sold the account and the

24 Local Franchisee. (See, Exhibit "C", Unishippers Global's "Shared Account Policy".)

25     31.     The "Shared Account Policy" further provides that "Franchisees that do not follow

26 the process outlined in this Policy may be subject to the Franchisor requiring the Franchisee to

27 pay appropriate sums to the Local Franchisee and may be subject to the breach and termination

28 provisions of the applicable franchise agreement." (See, Exhibit "C", § I.B, Unishippers Global's

COMPLAINT FOR DAMAGES, RESTITUTION          10
AND INJUNCTIVE RELIEF

McNAMARA, DODGE, NEY, BEATTY, SLATTERY, PFALZER, BORGES & BROTHERS LLP
ATTORNEYS AT LAW
P.O. BOX 5288, WALNUT CREEK, CA 94596
TELEPHONE: (925) 939-5330

1  "Shared Account Policy".)

2      32.    Since its inception nearly ten (10) years ago, Plaintiff expended considerable
3  money and resources soliciting, generating, developing and maintaining customer account
4  information in UONE and Freight Manager in order to maintain a competitive advantage in the
5  third party logistics business. Such customer account information constitutes trade secrets
6  because it derives independent economic value from not being generally known to the public or to
7  the third party logistics business industry. Plaintiff is able to exploit such trade secrets by using
8  methods and practices that have been adapted, developed and refined by Plaintiff over the years
9  into a unique and systemic client development and management process for use in the third party
10  logistics business.

11      33.    The efforts of Plaintiff in further developing, refining and exploiting its trade
12  secrets involved the expenditure of substantial time and money on research and development of
13  areas including, but not limited to, (i) methods and techniques of identifying and tracking client
14  prospects, procedures for establishing prospects as customers of Plaintiff, and methods and
15  techniques for managing customers' shipping and freight needs; (ii) methods of follow up,
16  consulting, and facilitating transactions for customers and prospects; (iii) trade name recognition
17  and goodwill; and (iv) systemic methods for processing transactions and managing accounts
18  established with customers.

19      34.    Plaintiff hires salespersons whose duties include, but are not limited to, building a
20  book of business by contacting and developing sales leads and closing sales and providing
21  ongoing service to existing and new clients nationwide. Plaintiff lends salespersons computers to
22  use to perform their duties and record data that is collected in the course of their work. Once a
23  salesperson brings in a new account, he or she sends detailed information regarding that customer
24  to Plaintiff's customer service support personnel who manually set up and enter the information
25  into the UONE and Freight Manager secure computer databases. All product rates, margins,
26  discounts or other special pricing incentives for each customer are set and managed solely by
27  Plaintiff's management. Salespersons are neither trained nor authorized to make any changes to
28  customers' rates, margins, discounts or other special pricing incentives. Plaintiff bears all costs

COMPLAINT FOR DAMAGES, RESTITUTION        11
AND INJUNCTIVE RELIEF

1  associated with carrying out such functions and maintaining its customer service support
2  personnel.

3   35.   Plaintiff produced an employee handbook that set forth its policies and procedures

4  regarding a code of conduct, including but not limited to, employees' attendance and punctuality,

5  benefits, the behavior of employees, conflicts of interest, confidentiality, employment

6  termination, pay practices and other items. The version in effect during the herein relevant times,

7  January 2009 through June 2009, was the June 2006 version (See, Exhibit "D", Plaintiff's

8  "Employee Handbook".) At page 5 of 14 of the Employee Handbook, under a section entitled

9  "Conduct", are the following subsections:

10  • Behavior of Employees: It is the policy of Mercari, Inc. that all employees conduct

11    themselves in a professional manner both internally and externally with customers and

12    vendors.

13  • Conflicts of Interest: All employees are expected to accord Mercari, Inc. his/her primary

14    professional loyalty, and to arrange outside obligations, financial interests and activities so

15    as to not conflict with their commitment to Mercari, Inc. [. . .]

16  • Confidentiality: All employees are expected to keep information related to Mercari and its

17    business confidential and not disclose information other than publicly available

18    information to any vendor, customer, prospective customer, carrier, or any other entity

19    without the express permission from Management.

20   36.   Beget executed an Acknowledgment Form ("Acknowledgement") attesting to the

21  fact that he had read, understood and accepted all responsibility as described in the Mercari

22  Employee Handbook. The Acknowledgement further provided that Beget understood that by

23  signing the form he was agreeing to abide by Mercari's policies set forth in the Employee

24  Handbook. (See, Exhibit "E", Beget's Handbook Acknowledgment Form.)

25   37.   Walsh also executed an Acknowledgment attesting to the fact that he had read,

26  understood and accepted all responsibility as described in the Mercari Employee Handbook. The

27  Acknowledgement further provided that Walsh understood that by signing the form he was

28  agreeing to abide by Mercari's policies set forth in the Employee Handbook. (See, Exhibit "F",

COMPLAINT FOR DAMAGES, RESTITUTION      12
AND INJUNCTIVE RELIEF

1    Walsh's Handbook Acknowledgment Form.)

2        38.    Plaintiff is informed and believes and based thereon alleges, that sometime around

3    March 2009, Defendants, acting in concert and as agents of one another, developed and resolved

4    to commit to a sinister, multi-faceted scheme to divert Plaintiff's most profitable customers,

5    particularly customers associated with Plaintiff's San Francisco Territory, to Co-Defendants First

6    Street Capital and Molger. This sinister, multi-faceted scheme, as well as the processes

7    undertaken to finance, facilitate and carry it out, are herein referred to at times as the "Beget

8    Asset Theft Enterprise."

9        39.    Plaintiff is informed and believes and based thereon alleges, that sometime around

10   March 2009, as a part of the Beget Asset Theft Enterprise, Beget recruited another of Plaintiff's

11   salespersons, Matthew Walsh, in order to assist in Defendants' efforts to carry out the Beget

12   Asset Theft Enterprise.

13       40.    Plaintiff is informed and believes and based thereon alleges, that sometime around

14   March 2009, while Beget and Walsh were still employed by Plaintiff, Defendants, acting in

15   concert and as agents of one another, began negotiating the terms of agreements, including

16   written contracts between themselves, in order to assign, account for and distribute amongst

17   themselves the proceeds of the Beget Asset Theft Enterprise.

18       41.    Plaintiff is informed and believes and based thereon alleges, that, as early as

19   March 2009, in order to facilitate the Beget Asset Theft Enterprise, Beget, while still employed

20   with Plaintiff, initiated the creation of a new third party logistics shipping and freight company in

21   the State of Nevada named Monkey Logistics. Upon information and belief, Co-Defendants lent

22   financial, advisory and other support to Beget and Monkey Logistics in order to further facilitate

23   the Beget Asset Theft Enterprise.

24       42.    Plaintiff is informed and believes and based thereon alleges, that on or about

25   March 2009, while still employed by Plaintiff and in furtherance of the Beget Asset Theft

26   Enterprise, Beget began negotiating and drafting the terms of an "Employment and Common

27   Stock Purchase Agreement" with Breen and First Street Capital, a Unishippers' Local Franchisee

28   and competitor of Plaintiff. Pursuant to terms of said agreement with Breen and First Street

MCNAMARA, DODGE, NEY, BEATTY, SLATTERY, PFALZER, BORGES & BROTHERS LLP
ATTORNEYS AT LAW
P. O. BOX 5288, WALNUT CREEK, CA 94596
TELEPHONE: (925) 939-5330

1   Capital, Beget was to be paid a base salary as well as commissions, not only for performing

2   essentially the same work that he was performing for Plaintiff, but also for his efforts since March

3   2009 to divert Plaintiff's customers to Breen and First Street Capital.

4   43.   Plaintiff is informed and believes and based thereon alleges, that on or about May

5   12, 2009, while still employed by Plaintiff, Beget and Walsh, in furtherance of the Beget Asset

6   Theft Enterprise, negotiated a "Sales Representative Agreement" between Molger and Monkey

7   Logistics. Under this agreement, Beget and Walsh were to perform substantially the same tasks

8   for Molger as they did for Plaintiff in exchange for compensation solely on a commissions basis.

9   44.   Plaintiff is informed and believes and based thereon alleges, that on or about May

10   15, 2009, while still employed by Plaintiff, Beget, on behalf of Monkey Logistics and in

11   furtherance of the Beget Asset Theft Enterprise, negotiated a "Loan Agreement" with Movement,

12   a division of Triandafilou's holding company, Newburyport, in order to obtain start up and/or

13   operational funds for Monkey Logistics.

14   45.   Plaintiff is informed and believes and based thereon alleges, that on or about May

15   15, 2009, while still employed by Plaintiff, Beget, in furtherance of the Beget Asset Theft

16   Enterprise, negotiated the terms of an agreement between Monkey Logistics and Voxx, another

17   division of Triandafilou's holding company, Newburyport, whereby Monkey Logistics would

18   remit 50% of payments that it received from Molger to Voxx. Plaintiff is informed and believes

19   and based thereon alleges, that said agreement between Monkey Logistics and Voxx specifically

20   memorializes "a business arrangement with DNA Freight", otherwise known as Molger, whereby

21   Monkey Logistics receives "biweekly payments from DNA."

22   46.   Plaintiff is informed and believes and based thereon alleges, that beginning

23   sometime around March 2009, Beget, Walsh and Breen, as a part of the Beget Asset Theft

24   Enterprise, began disclosing Plaintiff's confidential financial information as well as identifying,

25   soliciting, diverting and siphoning off Plaintiff's most profitable customers, particularly

26   customers associated with Plaintiff's San Francisco Territory, to Co-Defendants Breen, First

27   Street Capital and Molger through a variety of sinister schemes, including, but not limited to:

28   (i)   transferring Plaintiff's trade secrets including confidential customer contact

COMPLAINT FOR DAMAGES, RESTITUTION   14
AND INJUNCTIVE RELIEF

McNAMARA, DODGE, NEY, BEATTY, SLATTERY, PFALZER, BORGES & BROTHERS LLP
ATTORNEYS AT LAW
P.O. BOX 5288, WALNUT CREEK, CA 94596
TELEPHONE: (925) 939-5330

1    information to Breen, First Street Capital and Molger;

2        (ii)    transferring Plaintiff's trade secrets including confidential customer pricing

3    information to Breen, First Street Capital and Molger;

4        (iii)   giving Plaintiff's existing customers new account numbers and identifications as

5    well as new contact information in order to route such customers to themselves unbeknownst to

6    Plaintiff and in order to cover their tracks and facilitate the diversion of those customers;

7        (iv)    disclosing Plaintiff's confidential and highly-sensitive financial information

8    directly to Breen and First Street Capital, including but not limited to, the 2008 Profit and Loss

9    statement for Plaintiff's San Francisco Territory, the 2008 Profit and Loss statement for

10   Plaintiff's combined territories, and graphs depicting Plaintiff's monthly gross margins from

11   January 2007 through March 2009. Plaintiff is further informed and believes that Beget and

12   Breen obtained such confidential and highly-sensitive financial information through fraud;

13       (v)     maliciously making one or more defamatory statements about Plaintiff to

14   Plaintiff's customers;

15       (vi)    accessing without authorization and/or in excess of authorization and manipulating

16   and sabotaging Plaintiff's Freight Manager system's computer database system, without

17   Plaintiff's knowledge or consent, by unlawfully altering Plaintiff's pricing system for specific

18   customers, particularly customers in the San Francisco Territory, in order for it to appear to such

19   customers that Plaintiff had raised the rates for its services above the rates provided by

20   Defendants;

21       (vii)   providing Plaintiff's existing and prospective customers with secret rebates and

22   unearned discounts not commonly provided in the industry or to other similarly situated

23   customers in the form of promises to waive, and waiving, reclassification fees incurred by

24   customers, and encouraging Plaintiff's customers to not pay outstanding balances owed to

25   Plaintiff, in order to divert such customers away from Plaintiff and to Defendants.

26       47.    Defendants, each of them, were not only aware of Beget and Walsh's above-

27   referenced improper schemes, but aided and abetted, and conspired with, Beget and Walsh to

28   further the Beget Asset Theft Enterprise.

COMPLAINT FOR DAMAGES, RESTITUTION        15
AND INJUNCTIVE RELIEF

1    48.    Plaintiff is informed and believes and based thereon alleges, that beginning

2    sometime around March 2009, Beget and Walsh were not only employees of Plaintiff but,

3    unbeknownst to Plaintiff, were also the agents and/or employees of Defendants and in doing the

4    things herein alleged were acting within the course and scope of such agency and employment

5    and with the permission and consent of Defendants.

6    49.    Plaintiff is informed and believes and based thereon alleges, that Defendants

7    continue to benefit from the Beget Asset Theft Enterprise, to service Plaintiff's diverted

8    customers and to use Plaintiff's confidential customer information for their own benefit and gain

9    to the exclusion and damage of Plaintiff despite Plaintiff's objection and demand that Defendants

10    cease and desist.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

## VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT

## ORGANIZATIONS ACT, 18 U.S.C. § 1962(c)

### (Against all Defendants)

16    50.    Plaintiff alleges and incorporates by reference the allegations in the preceding

17    paragraphs.

### The RICO Enterprise

19    51.    Defendants Beget, Walsh, Breen, First Street Capital, Molger, Monkey Logistics,

20    Triandafilou, Newburyport, Voxx, and Movement, acting in concert and as agents of one another,

21    comprise an association in fact, referred to herein as the "Beget Asset Theft Enterprise."

22    52.    The continuing association formed by these parties constitutes a RICO enterprise

23    within the meaning of 18 U.S.C. § 1961(4).

### Pattern of Racketeering Activity

25    53.    Plaintiff is informed and believes and based thereon alleges, that from in or about

26    March 2009, and continuing to and through the present, Defendants Beget, Walsh, Breen, First

27    Street Capital, Molger, Monkey Logistics, Triandafilou, Newburyport, Voxx, and Movement,

28    acting in concert and as agents of one another, have unlawfully, knowingly, and intentionally

COMPLAINT FOR DAMAGES, RESTITUTION    16
AND INJUNCTIVE RELIEF

MCNAMARA, DODGE, NEY, BEATTY, SLATTERY, PFALZER, BORGES & BROTHERS LLP
ATTORNEYS AT LAW
P. O. BOX 5288, WALNUT CREEK, CA 94596
TELEPHONE: (925) 939-5330

1  conducted and participated, and continue to conduct and participate, in the affairs of the Beget

2  Asset Theft Enterprise, through a pattern of racketeering activity that includes devising and

3  intending to devise and execute a multi-faceted scheme and artifice to defraud and to obtain

4  money or property by means of false and fraudulent pretenses, representations, and promises,

5  through the use of the U.S. mails, private and commercial interstate carriers, through the use of

6  interstate wires and radio communications, and the transfer through interstate commerce of

7  property obtained by theft, conversion or fraud, having a value of more than $5,000.

8  54.     Plaintiff is informed and believes and based thereon alleges, that this racketeering

9  activity was performed by Beget, Walsh, Breen, First Street Capital, Molger, Monkey Logistics,

10 Triandafilou, Newburyport, Voxx, and Movement, acting in concert and as agents of one another,

11 in furtherance of their scheme:

12      (i) to obtain and convert wrongfully and unlawfully the highly sensitive financial and

13 proprietary information and trade secrets of Plaintiff;

14      (ii) to wrongfully and unlawfully use and exploit Plaintiff's highly sensitive financial and

15 proprietary information and trade secrets in an attempt to obtain dominance in the third party

16 logistics shipping and freight reselling industry using Plaintiff's own information and trade

17 secrets against it;

18      (iii) to deprive Plaintiff of the use and enjoyment of its highly sensitive financial and

19 proprietary information and trade secrets; and

20      (iv) to deprive Plaintiff of sales and market position and power it otherwise could have

21 attained were it not for Defendants' wrongful and unlawful use of stolen information and trade

22 secrets.

23      55.     Defendants, acting in concert and as agents of one another, have violated 18

24 U.S.C. § 1962(c), by conducting or participating in the conduct of the Enterprise's affairs through

25 a pattern of racketeering activity.

26      Use of the U.S. Mails, Private or Commercial Interstate Carriers, and Interstate Wires

27      56.     Plaintiff is informed and believes and based thereon alleges, that Defendants

28 acting in concert and as agents of one another, have unlawfully, willfully, and knowingly used the

COMPLAINT FOR DAMAGES, RESTITUTION          17
AND INJUNCTIVE RELIEF

U.S. mails, private or commercial interstate carriers, and interstate wires in furtherance of their scheme and artifice to defraud Plaintiff and deprive it of its property rights in highly sensitive financial and proprietary information and trade secrets, by myriad and repeated acts including, but not limited to:

(i) recruiting Plaintiff's then current employees, including but not limited to, Justin Beget and Matthew Walsh, to form and join the Beget Asset Theft Enterprise;

(ii) fraudulently transferring and receiving Plaintiff's confidential customer contact information and trade secrets from Beget and Walsh to Breen, First Street Capital, and Molger;

(iii) fraudulently transferring and receiving Plaintiff's confidential customer pricing information and trade secrets from Beget and Walsh to Breen, First Street Capital, and Molger;

(iv) using Plaintiff's computers, computer systems, phones and other resources to solicit new customers and divert Plaintiff's existing customers to themselves and Co-Defendants;

(v) giving Plaintiff's existing customers new Unishippers' account numbers and identifications as well as new contact information, unbeknownst to Plaintiff, in order to divert such customers to themselves and in order to cover their tracks and facilitate the diversion of those customers;

(vi) disclosing, converting and obtaining through fraud Plaintiff's confidential and highly-sensitive financial information, including, but not limited to, the 2008 Profit and Loss statement for Plaintiff's San Francisco Territory, the 2008 Profit and Loss statement for Plaintiff's combined territories, and graphs depicting Plaintiff's monthly gross margins from January 2007 through March 2009;

(vii) maliciously making one or more defamatory statements about Plaintiff to Plaintiff's customers, and within the context of commercial advertising or promotion, misrepresenting the nature, characteristics, qualities of Plaintiff's and Defendant's services and commercial activities;

(viii) accessing without authorization, or in excess of authorization, and manipulating and sabotaging Plaintiff's Freight Manager system's computer database system, without Plaintiff's knowledge or consent, by unlawfully altering Plaintiff's pricing system for specific

COMPLAINT FOR DAMAGES, RESTITUTION     18
AND INJUNCTIVE RELIEF

customers, particularly customers coded for Plaintiff's San Francisco Territory, in order for it to falsely appear to such customers accessing the database that Plaintiff had raised the rates for its services above its previously offered rates and above the rates available from Defendants;

(ix)     providing Plaintiff's existing and prospective customers with secret rebates and unearned discounts not commonly provided in the industry or to other similarly situated customers in the form of promises to waive, and waiving, reclassification fees incurred by customers, and encouraging customers not to pay Plaintiff for outstanding invoices, in order to divert such customers away from Plaintiff and to Defendants;

(x)     providing Beget with financial support and other resources in order to start up and operate Monkey Logistics and in order to facilitate and further the Beget Asset Theft Enterprise;

(xi)     entering false customer addresses and contact information into the UONE database in order to circumvent margin sharing with Plaintiff.

57.     Plaintiff is informed and believes and based thereon alleges, that Defendants, acting in concert and as agents of one another, have unlawfully, knowingly and intentionally engaged in two or more acts indictable under the Federal Mail Fraud Statute, 18 U.S.C. § 1341, the Federal Wire Fraud Statute, 18 U.S.C. § 1343, and the Federal Interstate Receipt of Stolen Property Statute, 18 U.S.C. §§ 2314 and 2315, and have therefore unlawfully, fraudulently, and intentionally engaged in predicate acts of racketeering within the meaning of 18 U.S.C. § 1961(1)(B) and/or aided and abetted one another in such wrongful acts.

58.     As a direct and proximate result of the Defendants' acting in concert and as agents of one another and their willful and unlawful participation in and conduct of the Beget Asset Theft Enterprise through a pattern of racketeering in violation of 18 U.S.C. § 1962(c), Plaintiff has been injured in its business and property in myriad ways, including but not limited to:

(i)     the loss of Plaintiff's employees;

(ii)     the loss of confidential customer information comprising trade secrets and the competitive advantages that Plaintiff enjoyed as a result of the confidential nature of such customer information and trade secrets;

(iii)     the loss of no less than seventy-five (75) of Plaintiff's most profitable customers to

COMPLAINT FOR DAMAGES, RESTITUTION     19
AND INJUNCTIVE RELIEF

1    competitors as well as Plaintiff's goodwill and enjoyment of the revenues, profits and benefits
2    associated with servicing such customers;

3         (iv)    the loss of privacy and competitive advantages Plaintiff enjoyed as a result of its
4    confidential financial documents and records;

5         (v)     the loss of its reputation and goodwill with customers and the communities and
6    industries in which it conducts business;

7         (vi)    losses associated with investigating and mitigating the damages associated with
8    Defendant's manipulation, alteration and sabotage of Plaintiffs computer database system;

9         (vii)   losses associated with services provided by Plaintiff to customers who were
10   encouraged by Defendants to withhold or decline payment to Plaintiff.

11        59.     Plaintiff is entitled to an accounting by Defendants for any payments or
12   compensation that Defendants have received from Plaintiff's current and former customers.
13   Pursuant to 18 U.S.C. § 1964, Plaintiff is entitled to damages, including treble damages, for the
14   injuries, and is entitled to costs of the suit, including reasonable attorney's fees. Such damages
15   will be proven at trial. Alternatively, Plaintiff reserves the right to seek leave of this Court to
16   amend this Complaint to set forth the true and exact amount thereof when such amount has been
17   ascertained.

18                              **SECOND CAUSE OF ACTION**

19         **VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT**

20                **ORGANIZATIONS ACT, 18 U.S.C. § 1962(d)**

21                              **(Against all Defendants)**

22        60.     Plaintiff alleges and incorporates by reference the allegations in the preceding
23   paragraphs.

24        61.     Plaintiff is informed and believes and based thereon alleges, that Defendants
25   Beget, Walsh, Breen, First Street Capital, Molger, Monkey Logistics, Triandafilou, Newburyport,
26   Voxx, and Movement, intentionally acting in concert and as agents of one another, have
27   unlawfully, fraudulently, and intentionally conspired together to violate 18 U.S.C. § 1962(c).

28        62.     Specifically, upon information and belief, Defendants acting in concert and as

COMPLAINT FOR DAMAGES, RESTITUTION          20
AND INJUNCTIVE RELIEF

1   agents of one another, have unlawfully, fraudulently, and intentionally conspired together to (a)

2   obtain and misuse Plaintiff's confidential financial information and customer trade secrets to gain

3   an unfair business advantage over Plaintiff; (b) misuse such information to dominate the market

4   for third party logistics by using Plaintiff' confidential financial and customer information and

5   trade secrets against Plaintiff; and (c) conduct other illegal activities in furtherance of their

6   scheme to defraud Plaintiff.

7       63.     As a direct and proximate result of Defendants' wrongful and unlawful actions

8   described herein, Plaintiff has sustained actual damages according to proof at trial and will

9   continue to incur and sustain such damage in the future on an ongoing and continuing basis.

10  Plaintiff reserves the right to seek leave of this Court to amend this Complaint to set forth the true

11  and exact amount thereof when such amount has been ascertained.

12                          **THIRD CAUSE OF ACTION –**

13      **VIOLATION OF COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. § 1030**

14          **(Against Beget, Walsh, Breen, First Street Capital and Molger)**

15      64.     Plaintiff alleges and incorporates by reference the allegations in the preceding

16  paragraphs.

17      65.     Plaintiff lent Beget and Walsh computers to use in order to perform their duties

18  and record data collected in the course of their work. Said computers were, at all relevant times,

19  used in or affecting interstate and foreign commerce and communication.

20      66.     Beget and Walsh's authorized access to Plaintiff's computers terminated upon

21  their first acts of misconduct against Plaintiff, to wit, each Defendants' assumption of adverse

22  interests, violation of their duties of loyalty imposed on employees under agency law, and/or

23  other improper and unlawful conduct as alleged throughout this Complaint, whichever occurred

24  first.

25      67.     Plaintiff is informed and believes and based thereon alleges, that in the Spring of

26  2009, after their authorized access to Plaintiff's computers was terminated, Defendants, acting in

27  concert and as agents of one another, knowingly and with the intent to defraud, accessed

28  Plaintiff's protected computers, computer systems and data without authorization and/or in excess

COMPLAINT FOR DAMAGES, RESTITUTION        21
AND INJUNCTIVE RELIEF

McNAMARA, DODGE, NEY, BEATTY, SLATTERY, PFALZER, BORGES & BROTHERS LLP
ATTORNEYS AT LAW
P. O. BOX 5288, WALNUT CREEK, CA 94596
TELEPHONE: (925) 939-5330

1    of their authorized access, and:

2         (i)    obtained Plaintiff's confidential customer information and trade secrets;

3         (ii)   knowingly caused the improper transmission and dissemination of information,

4    including, but not limited to, confidential customer information and trade secrets to themselves

5    and Co-Defendants in competition with Plaintiff;

6         (iii)  solicited, diverted and serviced customers on behalf of themselves and Co-

7    Defendants in competition with Plaintiff;

8         (iv)   fraudulently obtained and disclosed Plaintiff's confidential and propriety financial

9    information to Co-Defendant competitors;

10        (v)    sabotaged, altered, impaired and otherwise compromised the integrity and

11   availability of Plaintiff's confidential customer information and trade secrets by, among other

12   things, changing, marking up or otherwise altering Plaintiff's pricing information for specific

13   customers and services, thereby impairing the integrity or availability of data, a program, a

14   system and information and causing damage to Plaintiff.

15        68.    Plaintiff is informed and believes and based thereon alleges, that after termination

16   of their employment, but before returning Plaintiff's computers to Plaintiff, Beget and Walsh

17   deleted data in said computers, including, but not limited to, data that each had collected for their

18   work, as well as data that would have revealed to Plaintiff evidence of the improper conduct in

19   which Defendants had engaged before being terminated.  Defendants' deletion of such data

20   impaired the integrity or availability of data, a program, a system and information and caused

21   damage to Plaintiff.

22        69.    Plaintiff is informed and believes and based thereon alleges, that Defendants'

23   conduct caused Plaintiff losses and damages worth more than $5,000 in any one year period.

24   Such damage and loss includes, but is not limited to, Plaintiff's efforts and resources expended in

25   assessing the extent of Defendants' improper disclosure and use of Plaintiff's confidential

26   customer information and trade secrets, assessing and rectifying harm caused by Defendants'

27   alterations, modifications and sabotage of Plaintiff's computers, computer systems, and data,

28   retrieving deleted materials, lost revenues and goodwill as well as costs incurred due to

COMPLAINT FOR DAMAGES, RESTITUTION        22
AND INJUNCTIVE RELIEF

1 interruptions in Plaintiff's services and loss of affected accounts.

2     70.    Plaintiff is informed and believes and based thereon alleges, that Defendants

3 Breen, First Street Capital and Molger knowingly and purposefully aided and abetted, as well as

4 conspired with, Beget and Walsh to carry out the herein alleged violations in furtherance of the

5 Beget Asset Theft Enterprise.

6     71.    Plaintiff is informed and believes and based thereon alleges, that Defendants'

7 conduct violated multiple provisions of the Computer Fraud and Abuse Act ("CFAA") including,

8 but not limited to, 18 U.S.C. §§ 1030(a)(2), (a)(4), (a)(5)(A)-(C) and (b).

9     72.    Plaintiff is informed and believes and based thereon alleges, that Defendants,

10 acting in concert and as agents of one another, knowingly engaged in such conduct for the

11 purposes of commercial advantage and/or private financial gain.

12     73.    Defendants' damage and illegal misuse of Plaintiff's protected computers caused

13 Plaintiff to suffer damages and losses greater than $5,000 in value during a one year period, in an

14 amount to be determined at trial. Alternatively, Plaintiff reserves the right to seek leave of this

15 Court to amend this Complaint to set forth the true and exact amount thereof when such amount

16 has been ascertained.

17                            **FOURTH CAUSE OF ACTION –**

18       **VIOLATION OF LANHAM ACT (TITLE II), 15 U.S.C. § 1125 et seq.)**

19       **(Against Beget, Walsh, Breen, First Street Capital and Molger)**

20     74.    Plaintiff alleges and incorporates by reference the allegations in the preceding

21 paragraphs.

22     75.    Plaintiff is informed and believes and based thereon alleges, that Defendants,

23 acting in concert and as agents of one another, have made statements in connection with

24 commercial promotion, that purposefully misrepresented the nature, characteristics and qualities

25 of Plaintiff's and Defendants' services and commercial activities in violation Section 43(a) of the

26 Lanham Act, 15 U.S.C. § 1125(a).

27     76.    Plaintiff is informed and believes and based thereon alleges, that in connection

28 with providing shipping and freight logistics services, Defendants, acting in concert and as agents

COMPLAINT FOR DAMAGES, RESTITUTION     23
AND INJUNCTIVE RELIEF

McNAMARA, DODGE, NEY, BEATTY, SLATTERY, PFALZER, BORGES & BROTHERS LLP
ATTORNEYS AT LAW
P. O. BOX 5288, WALNUT CREEK, CA 94596
TELEPHONE: (925) 939-5330

1    of one another, misrepresented to certain Plaintiff's customers that Plaintiff had either (i) raised

2    its rates, or (ii) was about to raise its rates, or that Co-Defendants offered better rates, when in

3    fact, the representations regarding rate increases and comparisons to Co-Defendants' rates were

4    false and the appearance of Plaintiff's higher rates was the result of Defendants' unauthorized

5    access and sabotage of Plaintiff's computers, computer systems and data.

6        77.    Plaintiff is informed and believes and based thereon alleges, that such

7    misrepresentations were made in bad faith to further the Beget Asset Theft Enterprise, to unfairly

8    interfere with competition and interstate commerce, and to damage Plaintiff.

9        78.    Plaintiff is informed and believes and based thereon alleges, that Defendants,

10   acting in concert and as agents of one another, unlawfully accessed and sabotaged Plaintiff's

11   customer pricing system as reflected in Freight Manager by artificially raising certain customers'

12   set pricing and rates in order to encourage such customers to patronize the services of Co-

13   Defendants. Upon information and belief, an estimated seventy-five (75) customers were

14   diverted to Defendants as a result of these actions. Plaintiff is entitled to an accounting by

15   Defendants for any payments or compensation that Defendants have received from Plaintiff's

16   current and former customers. Plaintiff reserves the right to seek leave of this Court to amend

17   this Complaint to set forth the true number of such customers when such number has been

18   ascertained.

19       79.    Upon information and belief, Plaintiff's former customers have relied on

20   Defendants' misleading and false statements and such reliance has economically impacted

21   Plaintiff's business.

22       80.    Plaintiff is entitled to an injunction restraining Defendants, and all persons acting

23   in concert with them, from engaging in further such acts in violation of the Lanham Act.

24       81.    Plaintiff is further entitled to recover from Defendants the damages it has sustained

25   and will sustain damages as a result of Defendants' wrongful acts as alleged above. Plaintiff is

26   entitled to recover from Defendants the damages sustained by it as a result of Defendants'

27   wrongful acts as alleged in this Complaint. Plaintiff is further entitled to recover from

28   Defendants the gains, profits, and advantages they have obtained as a result of their wrongful acts

COMPLAINT FOR DAMAGES, RESTITUTION          24
AND INJUNCTIVE RELIEF

as alleged in this Complaint. Plaintiff is at present unable to ascertain the full extent of these gains, profits, and advantages. Plaintiff is further entitled to treble damages as a result of Defendants' willful bad faith. Plaintiff reserves the right to seek leave of this Court to amend this Complaint to set forth the true and exact amount thereof when such amount has been ascertained.

82.     Plaintiff is informed and believe and on that basis allege, that Defendants breach of the Lanham Act was willful, malicious, oppressive and fraudulent, justifying an award of attorneys' fees.

## FIFTH CAUSE OF ACTION

## UNAUTHORIZED ACCESS TO COMPUTERS, COMPUTER SYSTEMS AND COMPUTER DATA (California Penal Code § 502)

### (Against Beget, Walsh, Breen, First Street Capital and Molger)

83.     Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

84.     Plaintiff is informed and believes and based thereon alleges, that by the acts alleged in the preceding paragraphs, Defendants, acting in concert and as agents of one another, knowingly accessed and without permission used and compromised data, computers, computer systems and/or a computer network in order to devise and execute and conceal a scheme or artifice to defraud and deceive, and to wrongfully control and obtain money, property and data from Plaintiff, in violation of California Penal Code § 502.

85.     Plaintiff is informed and believes and based thereon alleges, that by the acts alleged in the preceding paragraphs, Defendants, acting in concert and as agents of one another, knowingly accessed and without permission took, copied and made use of data from a computer, computer system and a computer network owned by Plaintiff, in violation of California Penal Code § 502.

86.     Plaintiff has suffered damage and loss as a result of Defendants' violations of Penal Code § 502. Plaintiff is entitled to recover from Defendants for actual damages sustained by Plaintiff as a result of Defendants' wrongful acts as described in this Complaint, in an amount to be proven at trial. Alternatively, Plaintiff reserves the right to seek leave of this Court to

COMPLAINT FOR DAMAGES, RESTITUTION        25
AND INJUNCTIVE RELIEF

1  amend this Complaint to set forth the true and exact amount thereof when such amount has been
2  ascertained.

3      87.    Plaintiff is entitled to injunctive relief under Penal Code section 502.

4      88.    Plaintiff is informed and believes and on that basis alleges, that Defendants acted
5  with oppression, malice, and fraud.  Plaintiff is therefore entitled to an award of punitive
6  damages.

7      89.    Plaintiff is entitled to an award of attorney's fees under Penal Code § 502.

## SIXTH CAUSE OF ACTION

## FRAUD – INTENTIONAL MISREPRESENTATION (CIVIL CODE § 1709(1))

## (Against Beget, Walsh, Breen and First Street Capital)

90.    Plaintiff alleges and incorporates by reference the allegations in the preceding
paragraphs.

## MISREPRESENTATION REGARDING USE OF PROPRIETARY FINANCIAL INFORMATION

91.    Plaintiff is informed and believes and based thereon alleges, that Beget
fraudulently obtained and disclosed Plaintiff's confidential financial information and documents
to Defendants and Plaintiff's competitors, including, but not limited to, Plaintiff's 2008 Profit and
Loss Statement for the San Francisco Territory, Plaintiff's Graph of Historical Margins from
2007 through March 2009, and Plaintiff's consolidated 2008 Monthly Profit and Loss Statement.

92.    Plaintiff is informed and believes and based thereon alleges, that on or around
April 16, 2009, Beget requested and received certain above-referenced examples of Plaintiff's
private financial information and documents from Plaintiff's management for the purpose of
facilitating negotiations between he and Plaintiff's management regarding a potential stock
purchase agreement between them.

93.    Plaintiff is informed and believes and based thereon alleges, that the
representations made by Beget regarding his purpose for requesting Plaintiff's financial
information and documents were false.  Upon information and belief, the true facts were that (i)
Beget intended to forward, disclose, misappropriate and convert, such confidential financial

COMPLAINT FOR DAMAGES, RESTITUTION        26
AND INJUNCTIVE RELIEF

1    information to Plaintiff's competitors, Breen and First Street Capital and (ii) shortly thereafter,

2    Beget did, in fact, forward, disclose, misappropriate and convert said financial information and

3    documents directly to Breen and First Street Capital via at least three separate emails on or about

4    April 21, 2009.

5          94.    Plaintiff is informed and believes and based thereon alleges, that when Beget made

6    these representations to Plaintiff in connection with requesting Plaintiff's financial documents and

7    information, he knew them to be false and made these representations with the intention to

8    deceive and defraud the Plaintiff and to induce Plaintiff to provide such information and

9    documents in reliance on these representations in the manner alleged, or with the expectation that

10   Plaintiff would do so.

11         95.    Plaintiff, at the times these representations were made by Beget and at the times

12   that Plaintiff took the actions herein alleged, was ignorant of the falsity of the Defendants'

13   representations and believed them to be true. In reliance on these representations, the Plaintiff

14   was induced to and did disclose to Beget its confidential financial information and documents.

15   Had the Plaintiff known the actual facts, it would not have taken such action. The Plaintiff's

16   reliance on the Defendant's representations was justified because Plaintiff and Beget were

17   engaged in what Plaintiff reasonably perceived to be good faith negotiations regarding a potential

18   stock purchase agreement between itself and Beget and because Beget was an employee of

19   Plaintiff and contractually obligated to act in Plaintiff's best interest and adhere to the policies of

20   Plaintiff as set forth in his acknowledged offer letters and the Employee Handbook.

21         **MISREPRESENTATION REGARDING DECLINING PERFORMANCE**

22         96.    During the period of March 2009 through June 2009, Plaintiff began noticing that

23   Beget's productivity, in regard to his performance in developing new customers and maintaining

24   existing accounts, was declining sharply.

25         97.    At multiple times during the period of March 2009 through June 2009, Plaintiff,

26   both verbally, and in writing, confronted both Beget and Walsh as to the causes of Beget's

27   declining productivity.

28         98.    At each time during the period of March 2009 through June 2009 that Beget and

COMPLAINT FOR DAMAGES, RESTITUTION          27
AND INJUNCTIVE RELIEF

1   Walsh were confronted by Plaintiff as to the causes for Beget's declining productivity, Beget and

2   Walsh each represented to Plaintiff that neither knew the reason for the decline or represented that

3   the "economy" was to blame for Beget's decreased productivity and gave Plaintiff reassurances

4   that the declining performance was not due to any improper conduct.

5       99.     The repeated representations made by Beget and Walsh during the period of

6   March 2009 through June 2009 that they did not know the reason or that the "economy" was to

7   blame for Beget's decreased productivity, as well as their reassurances that that Beget's declining

8   productivity was not due to any improper conduct on their parts, were false and/or purposefully

9   misleading. The true facts were that at the times of the said representations, both Beget and

10  Walsh were engaged in a multi-faceted scheme to secretly divert Plaintiff's customers to Co-

11  Defendants and they were indeed actively diverting Plaintiff's customers to Co-Defendants.

12      100.    Plaintiff is informed and believes and based thereon alleges, that when Beget and

13  Walsh made these representations as to Beget's decreased productivity, as well as their

14  reassurances that that his declining productivity was not due to any improper conduct, Beget and

15  Walsh knew that those representations were false, and made these representations with the

16  intention to deceive and defraud Plaintiff and to induce Plaintiff to forbear from initiating any

17  investigation into the true cause for Beget's declining productivity in reliance on these

18  representations, or with the expectation that Plaintiff would do so.

19      101.    Plaintiff, at the times these representations were made by Beget and Walsh, and at

20  the times that Plaintiff took the actions herein alleged, was ignorant of the falsity of the

21  Defendants' representations and believed them to be true. In reliance on these representations,

22  Plaintiff was induced to and did forbear from initiating any investigation into Beget and Walsh's

23  improper conduct. Had Plaintiff known the actual facts, it would not have taken such action.

24  Had Plaintiff known the true facts, it would have terminated Defendants' employment. The

25  Plaintiff's reliance on the Defendants' representations was justified because Defendants were

26  trusted employees of Plaintiff and contractually obligated to act in Plaintiff's best interest and

27  adhere to the policies of Plaintiff as set forth in each Defendants' acknowledged offer letters and

28  the Employee Handbook.

COMPLAINT FOR DAMAGES, RESTITUTION        28
AND INJUNCTIVE RELIEF

## MISREPRESENTATION REGARDING LOST ACCOUNTS

102.   Additionally, in mid-May 2009, Plaintiff confronted Defendants Breen and First Street Capital regarding Plaintiff's findings that an unusual number of its customers that Beget had solicited and developed were leaving Plaintiff and obtaining services through Breen and First Street Capital. Breen and First Street Capital represented to Plaintiff that such customers had been solicited through an independently-derived "lead list" and accidentally been picked up as Breen and First Street Capital's customers and that Beget knew that many of Plaintiff's customer accounts that Beget had initiated and developed had been taken in such an accidental way by Breen and First Street Capital.

103.   Plaintiff is informed and believes and based thereon alleges, that Breen and First Street Capital's representations regarding the existence of an independently-derived "lead list" and the accidental "pick up" of Plaintiff's customers were false and Breen and First Street Capital knew them to be false. The true facts, which Breen and First Street Capital knew, were that Beget and Walsh were diverting Plaintiff's customers to Breen, First Street Capital and others.

104.   At roughly the same time in mid-May 2009, when Plaintiff confronted Beget regarding the issue of an unusual number of Plaintiff's clients that he had developed were leaving Plaintiff and were obtaining services through Breen and First Street Capital, Beget corroborated Breen and First Street Capital's representations. Plaintiff is informed and believes and based thereon alleges, that when Beget corroborated Breen and First Street Capital's representations in response to Plaintiff's inquiries, he knew that corroboration to be false. The true facts, which Beget knew, were that he and Walsh were engaged in a multi-faceted scheme to secretly divert Plaintiff's customers to Co-Defendants and they were indeed actively diverting Plaintiff's customers to Co-Defendants.

105.   Plaintiff is informed and believes and based thereon alleges, that when Beget, Breen and First Street Capital made such representations that they knew to be false, and they did so with the intent to deceive and defraud Plaintiff and to induce Plaintiff to forbear from initiating any further investigation into the true cause for why an unusual number of its customers that Beget had solicited and developed were leaving Plaintiff and obtaining services through Breen

COMPLAINT FOR DAMAGES, RESTITUTION          29
AND INJUNCTIVE RELIEF

1    and First Street Capital.

2        106.    Plaintiff, at the times these representations were made by Beget, Breen and First
3    Street Capital and at the times that Plaintiff took the actions herein alleged, was ignorant of the
4    falsity of the Defendants' representations and believed them to be true. In reliance on these
5    representations, Plaintiff was induced to and did forbear from initiating any further investigation
6    into Beget and Walsh's improper conduct. Had Plaintiff known the actual facts, it would not
7    have taken such action. Had Plaintiff known the true facts, it would have terminated Defendant's
8    employment. The Plaintiff's reliance on the Defendants' representations was justified because
9    Defendants were trusted employees of Plaintiff and contractually obligated to act in Plaintiff's
10   best interest and adhere to the policies of Plaintiff as set forth in each Defendants' acknowledged
11   offer letters and the Employee Handbook.

12       107.    As a proximate result of the fraudulent conduct of Beget, Walsh, Breen and First
13   Street Capital as herein alleged, the Plaintiff is damaged in amounts, including but not limited to,
14   (i) sums representing Beget and Walsh's salaries plus commissions and benefits for the months of
15   March 2009 through June 2009, (ii) sums representing Plaintiff's efforts to assess and address the
16   extent of Defendant's multi-faceted scheme including damage from Defendants' unlawful access
17   and sabotage of Plaintiff's protected computer database system, (iii) sums representing the value
18   of lost confidential financial information, (iv) sums representing losses from disclosure of
19   customer information and trade secrets relating to no less than seventy-five (75) customers whose
20   business was diverted to Co-Defendant competitors, (v) sums representing lost profits to Plaintiff
21   associated with said customers, and (vi) sums representing losses to Plaintiff's reputation and
22   goodwill, all in amounts to be proven at trial. Plaintiff is entitled to an accounting by Defendants
23   for any payments or compensation that Defendants have received from Plaintiff's current and
24   former customers. Plaintiff reserves the right to seek leave of this Court to amend this Complaint
25   to set forth the true and exact amounts thereof when such amounts have been ascertained.

26   ///

27   ///

28   ///

COMPLAINT FOR DAMAGES, RESTITUTION          30
AND INJUNCTIVE RELIEF

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## SEVENTH CAUSE OF ACTION

## FRAUD – NEGLIGENT MISREPRESENTATION (CIVIL CODE §§ 1709(2))

### (Against Beget, Walsh, Breen and First Street Capital)

108. Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

## MISREPRESENTATION REGARDING USE OF PROPRIETARY FINANCIAL INFORMATION

109. Plaintiff is informed and believes and based thereon alleges, that Beget fraudulently obtained and disclosed Plaintiff's confidential financial information and documents to Plaintiff's competitors, including, but not limited to, Plaintiff's 2008 Profit and Loss Statement for the San Francisco Territory, Plaintiff's Graph of Historical Margins from 2007 through March 2009, and Plaintiff's consolidated 2008 Monthly Profit and Loss Statement.

110. Plaintiff is informed and believes and based thereon alleges, that on or around April 16, 2009, Beget requested and received certain above-referenced examples of Plaintiff's private financial information and documents from Plaintiff's management for the purpose of facilitating negotiations between he and Plaintiff's management regarding a potential stock purchase agreement between them.

111. Plaintiff is informed and believes and based thereon alleges, that when Beget made the representations regarding his purpose for requesting Plaintiff's financial information and documents he had no reasonable ground for believing them to be true. Upon information and belief, the true facts were that (i) Beget intended to forward, disclose, misappropriate and convert, such confidential financial information to Defendants and Plaintiff's competitors, Breen and First Street Capital and (ii) shortly thereafter, Beget did, in fact, forward, disclose, misappropriate and convert said financial information and documents directly to Breen and First Street Capital via at least three separate emails on or about April 21, 2009.

112. Plaintiff is informed and believes and based thereon alleges, that when Beget made these representations to Plaintiff in connection with requesting Plaintiff's financial documents and information, he had no reasonable ground for believing them to be true and made these

COMPLAINT FOR DAMAGES, RESTITUTION    31
AND INJUNCTIVE RELIEF

McNAMARA, DODGE, NEY, BEATTY, SLATTERY, PFALZER, BORGES & BROTHERS LLP
ATTORNEYS AT LAW
P.O. BOX 5288, WALNUT CREEK, CA 94596
TELEPHONE: (925) 939-5330

1    representations with the intention to deceive and defraud the Plaintiff and to induce Plaintiff to

2    provide such information and documents in reliance on these representations in the manner

3    alleged, or with the expectation that Plaintiff would do so.

4        113.    Plaintiff, at the times these representations were made by Beget and at the times

5    that Plaintiff took the actions herein alleged, was ignorant of the falsity of Defendant's

6    representations and believed them to be true. In reliance on these representations, the Plaintiff

7    was induced to and did disclose to Beget its confidential financial information and documents.

8    Had the Plaintiff known the actual facts, it would not have taken such action and it would have

9    terminated Beget's employment. Plaintiff's reliance on Defendant's representations was justified

10   because Plaintiff and Beget were engaged in what Plaintiff reasonably perceived to be good faith

11   negotiations regarding a potential stock purchase agreement between itself and Beget and because

12   Beget was an employee of Plaintiff and contractually obligated to act in Plaintiff's best interest

13   and adhere to the policies of Plaintiff as set forth in his acknowledged offer letters and the

14   Employee Handbook.

15                **MISREPRESENTATION REGARDING DECLINING PERFORMANCE**

16       114.    During the period of March 2009 through June 2009, Plaintiff began noticing that

17   Beget's productivity, in regard to his performance in developing new customers and maintaining

18   existing accounts, was declining sharply. At multiple times during the period of March 2009

19   through June 2009, Plaintiff, both verbally, and in writing, confronted both Beget and Walsh as to

20   the causes for Beget's declining productivity.

21       115.    At each time during the period of March 2009 through June 2009 that Beget and

22   Walsh were confronted by Plaintiff as to the causes for Beget's declining productivity, Beget and

23   Walsh represented to Plaintiff either that they did not know the causes or that the "economy" was

24   to blame for Beget's decreased productivity and gave Plaintiff reassurances that Beget's declining

25   performance was not due to any improper conduct.

26       116.    The repeated representations made by Beget and Walsh during the period of

27   March 2009 through June 2009 that they did not know the cause for Beget's declining

28   performance or that the "economy" was to blame for his decreased productivity, as well as their

COMPLAINT FOR DAMAGES, RESTITUTION          32
AND INJUNCTIVE RELIEF

1    reassurances that that Beget's declining productivity was not due to any improper conduct on

2    their parts, were false and/or purposefully misleading. The true facts were that at the times of the

3    said representations, both Beget and Walsh were engaged in a multi-faceted scheme to secretly

4    divert Plaintiff's customers to Co-Defendants and they were indeed actively diverting Plaintiff's

5    customers to Co-Defendants.

6        117.    Plaintiff is informed and believes and based thereon alleges, that when Beget and

7    Walsh made these representation as to Beget's decreased productivity, as well as their

8    reassurances that that his declining productivity was not due to any improper conduct on their

9    parts, Beget and Walsh had no reasonable ground for believing them to be true, and made these

10   representations with the intention to deceive and defraud Plaintiff and to induce Plaintiff to

11   forbear from initiating any investigation into the true cause for their declining productivity in

12   reliance on these representations, or with the expectation that Plaintiff would do so.

13       118.    Plaintiff, at the times these representations were made by Beget and Walsh, and at

14   the times that Plaintiff took the actions herein alleged, was ignorant of the falsity of the

15   Defendants' representations and believed them to be true. In reliance on these representations,

16   Plaintiff was induced to and did forbear from initiating any investigation into Beget and Walsh's

17   improper conduct. Had Plaintiff known the actual facts, it would not have taken such action and

18   it would have terminated Defendants' employment. Plaintiff's reliance on Defendants'

19   representations was justified because Defendants were trusted employees of Plaintiff and

20   contractually obligated to act in Plaintiff's best interest and adhere to the policies of Plaintiff as

21   set forth in each Defendants' acknowledged offer letters and the Employee Handbook.

## MISREPRESENTATION REGARDING LOST ACCOUNTS

23       119.    Additionally, in mid-May 2009, Plaintiff confronted Defendants Breen and First

24   Street Capital regarding Plaintiff's findings that an unusual number of its customers that Beget

25   had solicited and developed were leaving Plaintiff and obtaining services through Breen and First

26   Street Capital. Breen and First Street Capital represented to Plaintiff that such customers had

27   been solicited through an independently-derived "lead list" and accidentally been picked up as

28   Breen and First Street Capital's customers and that Beget knew that many of Plaintiff's customer

COMPLAINT FOR DAMAGES, RESTITUTION        33
AND INJUNCTIVE RELIEF

1    accounts that Beget had initiated and developed had been accidentally taken in such a way by

2    Breen and First Street Capital.

3        120.    Plaintiff is informed and believes and based thereon alleges, that Breen and First

4    Street Capital's representations regarding the existence of an independently-derived "lead list"

5    and the accidental "pick up" of Plaintiff's customers were false and Breen and First Street Capital

6    knew them to be false. The true facts, which Breen and First Street Capital knew, were that Beget

7    and Walsh were diverting Plaintiff's customers to their Co-Defendants.

8        121.    At roughly the same time in mid-May 2009, when Plaintiff confronted Beget

9    regarding the issue of an unusual number of Plaintiff's clients that he had developed were leaving

10   Plaintiff and were obtaining services through Breen and First Street Capital, Beget corroborated

11   Breen and First Street Capital's representations. Plaintiff is informed and believes and based

12   thereon alleges, that when Beget corroborated Breen and First Street Capital's representations in

13   response to Plaintiff's inquiries, he had no reasonable ground for believing them to be true. The

14   true facts were that Beget and Walsh were engaged in a multi-faceted scheme to secretly divert

15   Plaintiff's customers to Co-Defendants and they were indeed actively diverting Plaintiff's

16   customers to Co-Defendants.

17       122.    Plaintiff is informed and believes and based thereon alleges, that when Beget,

18   Breen and First Street Capital made such representations that they had no reasonable ground for

19   believing to be true, they did so with the intent to deceive and defraud Plaintiff and to induce

20   Plaintiff to forbear from initiating any further investigation into the true cause for why an unusual

21   number of its customers that Beget had solicited and developed were leaving Plaintiff and

22   obtaining services through Co-Defendants.

23       123.    Plaintiff, at the times these representations were made by Beget, Breen and First

24   Street Capital and at the times that Plaintiff took the actions herein alleged, was ignorant of the

25   falsity of the Defendants' representations and believed them to be true. In reliance on these

26   representations, Plaintiff was induced to and did forbear from initiating any further investigation

27   into Beget and Walsh's improper conduct. Had Plaintiff known the actual facts, it would not

28   have taken such action. Had Plaintiff known the true facts, it would have terminated Defendant's

COMPLAINT FOR DAMAGES, RESTITUTION          34
AND INJUNCTIVE RELIEF

1    employment. Plaintiff's reliance on Defendants' representations was justified because Beget was

2    a trusted employee of Plaintiff and contractually obligated to act in Plaintiff's best interest and

3    adhere to the policies of Plaintiff as set forth in his acknowledged offer letter and the Employee

4    Handbook.

5    124.    As a proximate result of the fraudulent conduct of Beget, Walsh, Breen and First

6    Street Capital as herein alleged, the Plaintiff is damaged in amounts, including but not limited to,

7    (i) sums representing Beget and Walsh's salaries plus commissions and benefits for the months of

8    March 2009 through June 2009, (ii) sums representing Plaintiff's efforts to assess and address the

9    extent of Defendants' multi-faceted scheme including damage from Defendants unlawful access

10   and sabotage of Plaintiff's protected computer database system, (iii) sums representing the lost

11   the value of confidential financial information, (iv) sums representing losses from disclosure of

12   customer information and trade secrets relating to no less than seventy-five (75) customers whose

13   business was diverted to Co-Defendant competitors, (v) sums representing lost profits to Plaintiff

14   associated with said customers, and (vi) sums representing losses to Plaintiff's reputation and

15   goodwill, all in amounts to be proven at trial. Plaintiff is entitled to an accounting by Defendants

16   for any payments or compensation that Defendants have received from Plaintiff's current and

17   former customers. Plaintiff reserves the right to seek leave of this Court to amend this Complaint

18   to set forth the true and exact amounts thereof when such amounts have been ascertained.

19                           **EIGHTH CAUSE OF ACTION**

20                           **FRAUD – CONCEALMENT**

21                           **(Against Beget and Walsh)**

22   125.    Plaintiff alleges and incorporates by reference the allegations in the preceding

23   paragraphs.

24                **CONCEALMENT OF SCHEME TO DEFRAUD PLAINTIFF**

25   126.    From approximately March 2009 through June 2009, Beget and Walsh performed

26   various duties relating to their employment with Plaintiff, collected salary, commissions and

27   benefits from Plaintiff, and enjoyed access to and obtained confidential financial information

28   regarding Plaintiff's business as a result of that employment relationship. All the while, Beget

COMPLAINT FOR DAMAGES, RESTITUTION          35
AND INJUNCTIVE RELIEF

1    and Walsh concealed the fact that they were knowingly violating the terms of their employment,

2    specifically their commitment to abide by Plaintiff's polices relating to conflicts of interest and

3    confidentiality, by, among other improper activities, diverting Plaintiff's customers to

4    competitors, sabotaging Plaintiff's protected computer database system, defaming Plaintiff in

5    written and verbal correspondence to Plaintiff's customers, disclosing confidential financial

6    documents, customer information and trade secrets to Plaintiff's competitors, and by setting up a

7    separate company to compete against Plaintiff.

8        127.    During the period of March 2009 through June 2009, Plaintiff began noticing that

9    Beget's productivity, in regard to his performance in developing new customers and maintaining

10   existing accounts, was declining sharply. At multiple times during the period of March 2009

11   through June 2009, Plaintiff, both verbally, and in writing, confronted both Beget and Walsh as to

12   the causes for Beget's declining productivity.

13       128.    At each time during the period of March 2009 through June 2009 that Beget and

14   Walsh were confronted by Plaintiff as to the causes for Beget's declining productivity, Beget and

15   Walsh represented to Plaintiff either that they did not know the causes or that the "economy" was

16   to blame for Beget's decreased productivity and concealed the true facts for Beget's declining

17   productivity.

18       129.    The repeated representations made by Beget and Walsh during the period of

19   March 2009 through June 2009 that they did not know the cause for Beget's declining

20   performance or that the "economy" was to blame for his decreased productivity, as well as their

21   reassurances that that Beget's declining productivity was not due to any improper conduct on

22   their parts, were made in order to conceal the true facts. The true facts were that at the times of

23   the said representations, both Beget and Walsh were engaged in a multi-faceted scheme to

24   secretly divert Plaintiff's customers to Co-Defendants and they were indeed actively diverting

25   Plaintiff's customers to Co-Defendants. The failures to disclose information and suppressions of

26   information herein alleged to have been made by Beget and Walsh were made with the intent to

27   induce the Plaintiff to act or forego action in the manner herein alleged in reliance thereon.

28       130.    The suppression of these facts regarding their improper activities was likely to

COMPLAINT FOR DAMAGES, RESTITUTION        36
AND INJUNCTIVE RELIEF

1    mislead Plaintiff and did in fact misled Plaintiff. Had Plaintiff known all the facts it would have

2    terminated Defendants' employment and it would not have foregone the opportunity to

3    investigate the nature and extent of Defendants' misconduct.

4        131.    The Plaintiff, at the time these failures to disclose and suppressions of facts

5    occurred, and at the time the Plaintiff took the actions herein alleged, was ignorant of the

6    existence of the facts that the Defendants suppressed and failed to disclose. If the Plaintiff had

7    been aware of the existence of the facts not disclosed by Defendants Beget and Walsh, the

8    Plaintiff would not have, as it did, continue to employ Beget and Walsh, continue to pay Beget

9    and Walsh their salaries, commissions and benefits, nor grant them access to, or provide them

10   with, Plaintiff's confidential financial, customer and trade secret information.

## CONCEALMENT OF FACTS REGARDING USE OF PROPRIETARY FINANCIAL INFORMATION

13       132.    Plaintiff is informed and believes and based thereon alleges, that Beget

14   fraudulently obtained and disclosed Plaintiff's confidential financial information and documents

15   to Plaintiff's competitors, including, but not limited to, Plaintiff's 2008 Profit and Loss Statement

16   for the San Francisco Territory, Plaintiff's Graph of Historical Margins from 2007 through March

17   2009, and Plaintiff's consolidated 2008 Monthly Profit and Loss Statement.

18       133.    Plaintiff is informed and believes and based thereon alleges, that on or around

19   April 16, 2009, Beget requested and received certain above-referenced examples of Plaintiff's

20   private financial information and documents from Plaintiff's management for the stated purpose

21   of facilitating negotiations between he and Plaintiff's management regarding a potential stock

22   purchase agreement between them.

23       134.    Plaintiff is informed and believes and based thereon alleges, that when Beget made

24   the representations regarding his purpose for requesting Plaintiff's financial information and

25   documents he concealed the true purpose for requesting said documents. Upon information and

26   belief, the true facts were that (i) Beget had already initiated his efforts to carry out a multi-

27   faceted scheme to disclose Plaintiff's trade secrets and divert Plaintiff's customers to Co-

28   Defendants and had indeed disclosed Plaintiff's trade secrets and diverted a substantial number of

COMPLAINT FOR DAMAGES, RESTITUTION         37
AND INJUNCTIVE RELIEF

McNAMARA, NEY, BEATTY, SLATTERY, PFALZER, BORGES & BROTHERS LLP
ATTORNEYS AT LAW
P.O. BOX 5288, WALNUT CREEK, CA 94596
TELEPHONE: (925) 939-5330

1    Plaintiff's customers to Co-Defendants; (ii) Beget intended to forward, disclose, misappropriate

2    and convert, said confidential financial information to Co-Defendants; and (iii) shortly thereafter,

3    Beget did, in fact, forward, disclose, misappropriate and convert said financial information and

4    documents directly to Breen and First Street Capital via at least three separate emails on or about

5    April 21, 2009.

6         135.    Plaintiff is informed and believes and based thereon alleges, that when Beget made

7    these representations to Plaintiff and concealed the true facts in connection with requesting

8    Plaintiff's financial documents and information, he purposefully concealed the true facts and

9    made these representations with the intent to deceive and defraud Plaintiff and to induce Plaintiff

10   to provide such information and documents in reliance on these representations in the manner

11   alleged, or with the expectation that Plaintiff would do so.

12        136.    Plaintiff, at the times these representations were made by Beget and at the times

13   that Plaintiff took the actions herein alleged, was ignorant of Defendant's concealment and

14   believed his representations to be true. Ignorant of the true facts as a result of Beget's

15   concealment, Plaintiff was induced to and did disclose to Beget its confidential financial

16   information and documents. Had Plaintiff known the actual facts, it would not have taken such

17   action and it would have terminated Beget's employment. Plaintiff's reliance on Defendant's

18   representations was justified because Plaintiff and Beget were engaged in what Plaintiff

19   reasonably perceived to be good faith negotiations regarding a potential stock purchase agreement

20   between itself and Beget and because Beget was an employee of Plaintiff and contractually

21   obligated to act in Plaintiff's best interest and adhere to the policies of Plaintiff as set forth in his

22   acknowledged offer letters and the Employee Handbook.

23                    **CONCEALMENT OF FACTS REGARDING LOST ACCOUNTS**

24        137.    Additionally, in mid-May 2009, Plaintiff confronted Defendants Breen and First

25   Street Capital regarding Plaintiff's findings that an unusual number of its customers that Beget

26   had solicited and developed were leaving Plaintiff and obtaining services through Breen and First

27   Street Capital. Breen and First Street Capital represented to Plaintiff that such customers had

28   been solicited through an independently-derived "lead list" and accidentally been picked up as

COMPLAINT FOR DAMAGES, RESTITUTION        38
AND INJUNCTIVE RELIEF

1    Breen and First Street Capital's customers and that Beget knew that many of Plaintiff's customer

2    accounts that Beget had initiated and developed had been accidentally taken in such a way by

3    Breen and First Street Capital.

4    138.    Plaintiff is informed and believes and based thereon alleges, that Breen and First

5    Street Capital's representations regarding the existence of an independently-derived "lead list"

6    and the accidental "pick up" of Plaintiff's customers were false and Breen and First Street Capital

7    knew them to be false. The true facts, which Breen and First Street Capital knew, were that Beget

8    and Walsh were diverting Plaintiff's customers to their Co-Defendants.

9    139.    At roughly the same time in mid-May 2009, when Plaintiff confronted Beget

10   regarding the issue of an unusual number of Plaintiff's clients that he had developed had left

11   Plaintiff and were obtaining services through Breen and First Street Capital, Beget corroborated

12   Breen and First Street Capital's representations. Plaintiff is informed and believes and based

13   thereon alleges, that when Beget corroborated Breen and First Street Capital's representations in

14   response to Plaintiff's inquiries, he purposefully concealed the true facts. The true facts were that

15   Beget and Walsh were engaged in a multi-faceted scheme to secretly divert Plaintiff's customers

16   to Co-Defendants and they were indeed actively diverting Plaintiff's customers to Co-Defendants.

17   140.    Plaintiff is informed and believes and based thereon alleges, that when Beget made

18   such representations and concealed the true facts, he did so with the intent to deceive and defraud

19   Plaintiff and to induce Plaintiff to forbear from initiating any further investigation into the true

20   cause for why an unusual number of its customers that Beget had solicited and developed were

21   leaving Plaintiff and obtaining services through Co-Defendants.

22   141.    Plaintiff, at the times these representations and concealment were made by Beget

23   and at the times that Plaintiff took the actions herein alleged, was ignorant of the Beget's

24   concealment and believed Defendants' representations to be true. In reliance on these

25   representations, Plaintiff was induced to and did forbear from initiating any further investigation

26   into Beget and Walsh's improper conduct. Had Plaintiff known the actual facts, it would not

27   have taken such action and it would have terminated Defendant's employment. The Plaintiff's

28   reliance on the Defendant's representations and concealment was justified because Beget was a

COMPLAINT FOR DAMAGES, RESTITUTION          39
AND INJUNCTIVE RELIEF

1    trusted employee of Plaintiff and contractually obligated to act in Plaintiff's best interest and

2    adhere to the policies of Plaintiff as set forth in Beget's acknowledged offer letters and the

3    Employee Handbook.

4    142. As a proximate result of the fraudulent conduct of Beget and Walsh as herein

5    alleged, the Plaintiff is damaged in amounts, including but not limited to, (i) sums representing

6    Beget and Walsh's salaries plus commissions and benefits for the months of March 2009 through

7    June 2009, (ii) sums representing Plaintiff's efforts to assess and address the extent of

8    Defendants' multi-faceted scheme including damage from Defendants' unlawful access and

9    sabotage of Plaintiff's protected computer database system, (iii) sums representing the value of

10   lost confidential financial information, (iv) sums representing losses from disclosure of customer

11   information and trade secrets relating to no less than seventy-five (75) customers whose business

12   was diverted to Co-Defendant competitors, (v) sums representing lost profits to Plaintiff

13   associated with said customers, and (vi) sums representing losses to Plaintiff's reputation and

14   goodwill, all in amounts to be proven at trial. Plaintiff is entitled to an accounting by Defendants

15   for any payments or compensation that Defendants have received from Plaintiff's current and

16   former customers. Plaintiff reserves the right to seek leave of this Court to amend this Complaint

17   to set forth the true and exact amounts thereof when such amounts have been ascertained.

18   143. The aforementioned conduct of Defendants was an intentional misrepresentation,

19   deceit, or concealment of a material fact known to the Defendants with the intention on the part of

20   Defendants of thereby depriving the Plaintiff of property or legal rights or otherwise causing

21   injury, and was despicable conduct that subjected Plaintiff to a cruel and unjust hardship in

22   conscious disregard of the Plaintiff's rights, so as to justify an award of exemplary and punitive

23   damages.

24                              **NINTH CAUSE OF ACTION**

25              **FRAUD – PROMISE MADE WITHOUT INTENTION TO PERFORM**

26                               **(Against Beget and Walsh)**

27   144. Plaintiff alleges and incorporates by reference the allegations in the preceding

28   paragraphs.

COMPLAINT FOR DAMAGES, RESTITUTION          40
AND INJUNCTIVE RELIEF

## PROMISE REGARDING LOYALTY TO PLAINTIFF

145.    Plaintiff is informed and believes and based thereon alleges, that at multiple times from March 2009 through June 2009, both Beget and Walsh verbally promised and reassured Plaintiff of their fidelity to Plaintiff and commitments that they had made, including, but not limited to:

(i)    each accorded to Plaintiff his primary professional loyalty, and arranged outside obligations, financial interests and activities so as not to conflict with their commitment to Plaintiff; and

(ii)    each would keep information related to Plaintiff and its business confidential and not disclose information other than publicly available information to any vendor, customer, prospective customer, carrier, or any other entity with the express permission of Management.

146.    Plaintiff is informed and believes and based thereon alleges, that the promises and reassurances of fidelity made by Beget and Walsh were in fact false and were never intended by Defendants to be adhered to or carried out. The true facts were that while employed by Plaintiff, Beget and Walsh violated their duties of loyalty to Plaintiff and duties to maintain confidentiality by diverting Plaintiff's customers to competitors, defaming Plaintiff in written and verbal correspondence with Plaintiff's customers, disclosing Plaintiff's confidential financial documents, customer information and trade secrets to competitors, setting up a separate company to compete against Plaintiff and recruiting Plaintiff's employees to participate in such unlawful acts.

147.    Plaintiff is informed and believes and based thereon alleges, that the Defendants made these promises and reassurances of fidelity with the intention of inducing the Plaintiff to act in reliance on these promises and reassurances by continuing to pay Defendants' their salaries, commissions and expenses, continuing to allow Defendants' use of Plaintiff's computers, computer systems and information, and to refrain from investigating and uncovering Defendants' improper conduct, or with the expectation that the Plaintiff would so act.

148.    The Plaintiff, at the time these promises and reassurances of fidelity were made by the Defendants and at the time the Plaintiff took the actions herein alleged, was ignorant of the

COMPLAINT FOR DAMAGES, RESTITUTION        41
AND INJUNCTIVE RELIEF

falsity of the Defendants' promises and reassurances and their true intentions not to perform. In reliance on these promises and reassurances, the Plaintiff was induced to and did continue to pay Beget and Walsh their salaries, commissions and expenses, continue to allow their use of Plaintiff's computers, computer systems and confidential customer information and trade secrets, and to refrain from investigating and uncovering Defendants' improper conduct. Had Plaintiff known the actual facts, it would not have taken such action and it would have terminated Defendants. Plaintiff's reliance on Defendants' promises and reassurances was justified because Beget and Walsh were Plaintiff's employees, because they were contractually obligated to act in Plaintiff's best interest and adhere to the policies of the company as set forth in their acknowledged offer letters and the Employee Handbook, and because they carefully concealed their improper schemes.

## PROMISE REGARDING USE OF PROPRIETARY FINANCIAL INFORMATION

149. Plaintiff is informed and believes and based thereon alleges, that Beget fraudulently obtained and disclosed Plaintiff's confidential financial information and documents to Plaintiff's competitors, including, but not limited to, Plaintiff's 2008 Profit and Loss Statement for the San Francisco Territory, Plaintiff's Graph of Historical Margins from 2007 through March 2009, and Plaintiff's consolidated 2008 Monthly Profit and Loss Statement.

150. Plaintiff is informed and believes and based thereon alleges, that on or around April 16, 2009, Beget requested and received certain above-referenced examples of Plaintiff's private financial information and documents from Plaintiff's management with the promise that he would use such information and documentation for the purpose of facilitating negotiations between he and Plaintiff's management regarding a potential stock purchase agreement between them.

151. Plaintiff is informed and believes and based thereon alleges, that when Beget made the promises and reassurances to use Plaintiff's financial information and documents for the limited and confidential purpose of facilitating the parties' above-referenced negotiations, he had no intent of keeping Plaintiff's financial information and documents confidential. Upon information and belief, the true facts were that (i) Beget had already initiated his efforts to carry

COMPLAINT FOR DAMAGES, RESTITUTION     42
AND INJUNCTIVE RELIEF

1    out a multi-faceted scheme to disclose Plaintiff's trade secrets and divert Plaintiff's customers to

2    Co-Defendants and had indeed disclosed Plaintiff's trade secrets and diverted a substantial

3    number of Plaintiff's customers to Co-Defendants; (ii) Beget intended to forward, disclose,

4    misappropriate and convert, said confidential financial information to Co-Defendants; and (iii)

5    shortly thereafter, Beget did, in fact, forward, disclose, misappropriate and convert said financial

6    information and documents directly to Breen and First Street Capital via at least three separate

7    emails on or about April 21, 2009.

8    152.    Plaintiff is informed and believes and based thereon alleges, that when Beget made

9    these promises and reassurances to Plaintiff without any intention of maintaining the

10   confidentiality of Plaintiff's financial documents and information, he made such promises with

11   the intent to deceive and defraud Plaintiff and to induce Plaintiff to provide such information and

12   documents in reliance on these promises in the manner alleged, or with the expectation that

13   Plaintiff would do so.

14   153.    Plaintiff, at the times these promises and reassurances were made by Beget and at

15   the times that Plaintiff took the actions herein alleged, was ignorant of Defendant's true intent not

16   to perform. Ignorant of the true facts as a result of Beget's concealment, Plaintiff was induced to

17   and did disclose to Beget its confidential financial information and documents. Had Plaintiff

18   known the actual facts, it would not have taken such action and it would have terminated Beget's

19   employment. Plaintiff's reliance on Defendant's promises and reassurances was justified because

20   Plaintiff and Beget were engaged in what Plaintiff reasonably perceived to be good faith

21   negotiations regarding a potential stock purchase agreement between itself and Beget and because

22   Beget was an employee of Plaintiff and contractually obligated to act in Plaintiff's best interest

23   and adhere to the policies of Plaintiff as set forth in his acknowledged offer letter and the

24   Employee Handbook.

25   154.    The aforementioned conduct of Beget and Walsh constitute promises with no

26   intent to perform thereby depriving the Plaintiff of property or legal rights or otherwise causing

27   injury, and was despicable conduct that subjected Plaintiff to a cruel and unjust hardship in

28   conscious disregard of the Plaintiff's rights, so as to justify an award of exemplary and punitive

COMPLAINT FOR DAMAGES, RESTITUTION        43
AND INJUNCTIVE RELIEF

1  damages.

2  **TENTH CAUSE OF ACTION**

3  **MISAPPROPRIATION OF TRADE SECRETS – VIOLATION OF UNIFORM TRADE**

4  **SECRETS ACT (Cal. Civil Code §§ 3426-3426.10)**

5  **(Against Beget, Walsh, Breen, First Street Capital and Molger)**

6  155.  Plaintiff alleges and incorporates by reference the allegations in the preceding

7  paragraphs.

8  156.  Plaintiff was in lawful and exclusive possession of financial information as well as

9  confidential customer lists and information which included, but was not limited to, customers'

10  names, contacts' names, contacts' information, customers' shipping and freight preferences,

11  customers' pricing and billing preferences as well as detailed information regarding customers'

12  shipping and freight volume, costs, margins, patterns and history. The confidential customer lists

13  and information were the result of a substantial amount of time, energy, and money on the part of

14  Plaintiff, were often manually entered into the computer database by Plaintiff's customer service

15  representatives, and included highly confidential special financial arrangements and pricing for

16  Plaintiff's customers based on the unique characteristics and needs of each customer.

17  157.  Plaintiff's financial information as well as confidential customer information and

18  lists had economic value in that they contained information not generally known within the

19  industry and represented many years of research, information storing and analysis, and client

20  communications.

21  158.  Plaintiff made reasonable efforts to insure that the confidential customer

22  information and lists remained secret by keeping the lists and information within UONE and its

23  Freight Manager system, each constituting a password and user ID protected computer database,

24  and requiring employees to execute employment policy acknowledgments regarding employees'

25  duties to keep the Plaintiff's private information confidential and not to disclose the information

26  to others.

27  159.  Plaintiff has invested substantial amounts of money and resources in the

28  development of safeguards, including but not limited to, password and user ID protection for

COMPLAINT FOR DAMAGES, RESTITUTION       44
AND INJUNCTIVE RELIEF

1    UONE and Freight Manager, internal protocols for employees entering, accessing and
2    manipulating information contained with the computer database systems, and having all
3    employees sign acknowledgments regarding the policies contained in the Employee Handbook
4    which includes policies regarding employee conduct, conflicts of interest and confidentiality of
5    Plaintiff's private information, in order to protect the information contained within the
6    confidential customer lists.

7        160.    Plaintiff's financial information, customer information, lists and pricing, among
8    other information contained in its computer systems, were trade secrets which merited legal
9    protection from Defendants' misappropriation.

10       161.    Plaintiff is informed and believes and based thereon alleges, that Defendants Beget
11   and Walsh accessed and obtained Plaintiff's confidential customer information, lists and trade
12   secrets in connection with their employment relationships with Plaintiff.

13       162.    Plaintiff is informed and believes and based thereon alleges, that from at least
14   March 2009 to the present, Beget and Walsh misappropriated and continue to misappropriate the
15   confidential customer lists, information and trade secrets by improperly disclosing such
16   information, without Plaintiff's consent, to Plaintiff's competitors and have diverted no less than
17   seventy-five (75) of Plaintiff's clients to Plaintiff's competitors including Molger, First Street
18   Capital and Breen.  Beget and Walsh also disclosed Plaintiff's special and confidential pricing
19   information regarding specific customers to Molger, First Street Capital and Breen in order for
20   such Defendants to undercut Plaintiff's rates.

21       163.    Plaintiff is informed and believes and based thereon alleges, that from at least
22   March 2009 to the present, Molger, First Street Capital and Breen knowingly misappropriated and
23   continue to misappropriate Plaintiff's confidential financial information, customer information,
24   lists and trade secrets by acquiring such confidential customer information, lists and trade secrets
25   while knowing, or having reason to know, that the customer information, lists and trade secrets
26   were acquired by improper means and/or through a person owing, or circumstances giving rise to,
27   a duty to maintain the information, lists and trade secrets' secrecy or limits on their use.

28       164.    As a proximate result of Defendants' actions, the misappropriation and disclosure

COMPLAINT FOR DAMAGES, RESTITUTION        45
AND INJUNCTIVE RELIEF

1  of Plaintiff's confidential financial information, customer information, lists and trade secrets has

2  destroyed the secrecy and protection of said information, lists and trade secrets, forever damaged

3  Plaintiff's relationships with such customers and damaged Plaintiff's business, reputation and

4  goodwill, including lost sales and customer opportunities resulting in damages to the Plaintiff in a

5  sum according to proof at trial. Alternatively, Plaintiff reserves the right to seek leave of this

6  Court to amend this Complaint to set forth the true and exact amount thereof when this amount

7  has been ascertained.

8  165.  Additionally, as a proximate result of Defendants' actions, the misappropriation of

9  the Plaintiff's confidential financial information, customer information, lists and trade secrets has

10  unjustly enriched Beget, Walsh, First Street Capital, Breen and Molger as a result of business that

11  was steered away and continue to steer away from Plaintiff and to and between Defendants in an

12  amount according to proof at trial. Plaintiff is entitled to an accounting by Defendants for any

13  payments or compensation that Defendants have received from Plaintiff's current and former

14  customers. Plaintiff reserves the right to seek leave of this Court to amend this Complaint to set

15  forth the true and exact amount thereof when this amount has been ascertained.

16  166.  The aforementioned conduct of Defendants was done with the intent of depriving

17  Plaintiff of property or legal rights or otherwise causing injury, and was despicable conduct that

18  subjected Plaintiff to a cruel and unjust hardship in conscious disregard of Plaintiff's rights, so as

19  to justify an award of exemplary and punitive damages.

## ELEVENTH CAUSE OF ACTION

### CONVERSION

**(Against Beget, Walsh, Breen, First Street Capital and Molger)**

23  167.  Plaintiff alleges and incorporates by reference the allegations in the preceding

24  paragraphs.

25  168.  At all times herein mentioned, and in particular during the time period of March

26  2009 through June 2009, Plaintiff was, and still is, the owner of certain confidential financial

27  information and customer information, lists and trade secrets and was and still is, entitled to the

28  possession of the said confidential financial information and customer information, lists and trade

COMPLAINT FOR DAMAGES, RESTITUTION  46
AND INJUNCTIVE RELIEF

1    secrets.

2         169.    Prior to Defendants' conversion of Plaintiff's confidential financial information,

3    that converted property had a value to Plaintiff including, but not limited to, value reflecting

4    Plaintiff's expensive and time-consuming efforts and internal analyses of its financial strengths

5    and health as well as highly-sensitive aspects and features of Plaintiff's business model and

6    strategies, altogether totaling a value to be proven at trial. Additionally, the property derived

7    considerable value from the fact that its information was not known to individuals or entities

8    outside Plaintiff, particularly Plaintiff's competitors.

9         170.    Prior to Defendant's conversion of Plaintiff's confidential customer information,

10   lists and trade secrets, that converted property had a value to Plaintiff in a total sum to be proven

11   at trial representing the revenues, income and profits generated by, upon information and belief,

12   no less than an estimated seventy-five (75) specific customer accounts.

13        171.    Plaintiff is informed and believes and based thereon alleges, that from March 2009

14   to the present, Beget and Walsh acting as agents for Co-Defendants Breen, First Capital and

15   Molger, and acting within the course and scope of their authority and under instructions from said

16   Co-Defendants, took and continue to take Plaintiff's confidential financial and customer

17   information, lists and trade secrets and convert them to their own use and the use of said Co-

18   Defendants in order to compete, as well as help their Co-Defendants compete, against Plaintiff.

19        172.    Despite requests from Plaintiff to return its confidential customer information and

20   cease using it to service and solicit Plaintiff's customers, Defendants have refused to return such

21   confidential information and/or cease using it to service and solicit Plaintiff's customers.

22   Moreover, given the nature of this conversion of Plaintiff's financial information and customer

23   information, lists and trade secrets, any demand for the immediate return of all such property

24   would be futile.

25        173.    As a proximate result of Defendants' conversions, Plaintiff has permanently lost

26   the value associated with the confidentiality of what is estimated to be no less than seventy-five

27   (75) customers' accounts, as well as the lost profits from past and future transactions with those

28   customers, all to Plaintiff's damage in a sum to be proven at trial. Plaintiff is entitled to an

COMPLAINT FOR DAMAGES, RESTITUTION    47
AND INJUNCTIVE RELIEF

1   accounting by Defendants for any payments or compensation that Defendants have received from

2   Plaintiff's current and former customers. Plaintiff reserves the right to seek leave of this Court to

3   amend this Complaint to set forth the true and exact amount thereof when this amount has been

4   ascertained.

5   174.   As a proximate result of Defendants' conversions, Plaintiff has also lost the value

6   associated with the confidentiality of its highly sensitive financial records to Plaintiff's damage in

7   a sum to be proven at trial. Plaintiff reserves the right to seek leave of this Court to amend this

8   Complaint to set forth the true and exact amount thereof when this amount has been ascertained.

9   175.   The Defendants' acts alleged were willful, wanton, malicious, and oppressive and

10   were undertaken with the intent to defraud and justify the awarding of exemplary and punitive

11   damages.

12   ## TWELFTH CAUSE OF ACTION

13   ## BREACH OF CONTRACT

14   ### (Against Beget and Walsh)

15   176.   Plaintiff alleges and incorporates by reference the allegations in the preceding

16   paragraphs.

17   177.   By their signed acknowledgment of an offer letter, Plaintiff's salesperson

18   employees enter into an employment agreement that dictates their employment duties, goals,

19   compensation and employment.

20   178.   Additional employment terms, including, but not limited, to attendance and

21   punctuality, benefits, conduct, termination, pay practices and reimbursement, are provided within

22   the Employee Handbook ("Handbook"). Under the section entitled "Conduct", the Handbook

23   provides as follows:

24   Behavior of Employees: It is the policy of Mercari, Inc. that all employees conduct

25   themselves in a professional manner both internally and externally with customers and

26   vendors.

27   Conflicts of Interest: All employees are expected to accord Mercari, Inc. his/her

28   primary professional loyalty, and to arrange outside obligations, financial interests

COMPLAINT FOR DAMAGES, RESTITUTION        48
AND INJUNCTIVE RELIEF

1   and activities so as not to conflict with their commitment to Mercari, Inc.

2   [. . .]

3   Confidentiality: All employees are expected to keep information related to

4   Mercari and its business confidential and not disclose information other than

5   publicly available information to any vendor, customer, prospective customer,

6   carrier, or any other entity without the express permission from management.

7   (See, Exhibit "D", Employee Handbook.)

8   179.    Each employee signs and dates an Acknowledgment Form with respect to the

9   Employee Handbook that reads as follows:

10  I (please print) _____, have read, understand,

11  and accept all responsibility as described in the Mercari, Inc. Employee

12  Handbook. I also understand that by signing this form, I am agreeing to abide by

13  these policies.

14  (See, Exhibit "D", Employee Handbook's Acknowledgement Form.)

15  180.    On or about June 29, 2006, in California, Beget signed and executed the Employee

16  Handbook's Acknowledgment Form. (See, Exhibit "E".)

17  181.    On or about January 30, 2007, in California, Walsh signed and executed the

18  Employee Handbook's Acknowledgment Form. (See, Exhibit "F".)

19  182.    As employees of Plaintiff, and having signed the Handbook's Acknowledgement

20  Forms, Beget and Walsh were bound by the Handbook's policies and, among other things, may

21  not disclose any of the Plaintiff's confidential information without express permission from

22  management or engage in other activities that conflicted with their primary loyalty to Plaintiff.

23  183.    The Defendants' use of information contained in the confidential customer lists for

24  their own benefit, or its disclosure for the benefit of competitors or other franchisees, would

25  naturally diminish the Plaintiff's chance of selling or consummating sales of services to

26  customers identified in such confidential customer lists.

27  184.    Plaintiff is informed and believes and based thereon alleges, that no management

28  personnel of Plaintiff authorized either Beget or Walsh to disclose Plaintiff's confidential

COMPLAINT FOR DAMAGES, RESTITUTION        49
AND INJUNCTIVE RELIEF

1  customer lists or information to third parties.

2      185.    The Defendants' use of information contained in Plaintiff's confidential financial

3  records for their own benefit, or its disclosure for the benefit of competitors or other franchisees,

4  would, among other things, naturally damage Plaintiff's competitive advantage in the industry.

5      186.    Upon information and belief, no management personnel of Plaintiff authorized

6  Defendants Beget or Walsh to disclose Plaintiff's confidential financial information to third

7  parties.

8      187.    Plaintiff has performed all conditions, covenants, and promises under the

9  employment agreement on its part to be performed.

10     188.    Plaintiff is informed and believes that Defendants breached the terms of their

11 employment agreements in myriad respects, including, but not limited to:

12     (i)    attempting to recruit and recruiting Plaintiff's employees to start a new company

13 in competition in with Plaintiff;

14     (ii)   starting a new company for the purpose of competing with Plaintiff;

15     (iii)  transferring Plaintiff's confidential customer contact information and trade secrets

16 to Co-Defendant competitors;

17     (iv)   transferring Plaintiff's confidential customer pricing information and trade secrets

18 to Co-Defendant competitors;

19     (v)    giving Plaintiff's existing customers new account numbers and identifications as

20 well as new contact information, unbeknownst to Plaintiff, in order to route such customers to

21 themselves and their Co-Defendants, and in order to cover their tracks and facilitate the diversion

22 of those customers;

23     (vi)   obtaining through fraud Plaintiff's confidential and highly-sensitive financial

24 information and providing such directly to Breen and First Street Capital, including, but not

25 limited to, the 2008 Profit and Loss statement for Plaintiff's San Francisco territory, the 2008

26 Profit and Loss statement for Plaintiff's combined territories, and graphs depicting Plaintiff's

27 monthly gross margins from January 2007 through March 2009;

28     (vii)  maliciously making one or more defamatory statements about Plaintiff to

COMPLAINT FOR DAMAGES, RESTITUTION          50
AND INJUNCTIVE RELIEF

1    Plaintiff's customers;

2        (viii)    accessing without authorization, or in excess of authorization, and manipulating
3    and sabotaging Plaintiff's Freight Manager system's computer database system, without
4    Plaintiff's knowledge or consent, by unlawfully altering Plaintiff's pricing system for specific
5    customers, particularly customers in the San Francisco Territory, in order for it to appear to such
6    customers that Plaintiff had raised the rates for its services above the rates provided by
7    Defendants.

8        (ix)    working as an agent for Plaintiff's competitors and by providing Plaintiff's
9    existing and prospective customers with, among other things, secret rebates and unearned
10   discounts not commonly provided in the industry or to other similarly situated customers in the
11   form of promises to waive, and waiving, reclassification fees incurred by customers, in order to
12   divert such customers away from Plaintiff and to their Co-Defendants;

13       (x)    making misrepresentations and concealing material facts from Plaintiff regarding
14   the loss of accounts and use of confidential information and trade secrets.

15       189.    As a proximate result of Defendants' repeated breaches of their employment
16   agreements, Plaintiff has suffered damages in an amount to be proven at trial. Plaintiff is entitled
17   to an accounting by Defendants for any payments or compensation that Defendants have received
18   from Plaintiff's current and former customers. Plaintiff reserves the right to seek leave of this
19   Court to amend this Complaint to set forth the true and exact amount thereof when this amount
20   has been ascertained.

21       190.    Plaintiff is informed and believes and based thereon alleges, that Defendants Beget
22   and Walsh have not only lost, destroyed or misappropriated Plaintiff's confidential financial
23   information and customer information, lists and trade secrets relating to not less than seventy-five
24   (75) customer accounts, but they knowingly and willfully have used and continue to use, the
25   information in the confidential customer lists in violation of their contract.

26   ///

27   ///

28   ///

COMPLAINT FOR DAMAGES, RESTITUTION        51
AND INJUNCTIVE RELIEF

# THIRTEENTH CAUSE OF ACTION

## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

### (Against Beget and Walsh)

191.    Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

192.    In every contract, including the employment contracts between Plaintiff and Beget and Plaintiff and Walsh, there is an implied covenant of good faith and fair dealing that neither party will do anything deliberately to deprive the other party of the benefits of the contract and to render performance on the contract impossible.

193.    After Beget and Walsh obtained access to, knowledge of, and helped develop many of Plaintiff's confidential customer accounts, both Beget and Walsh breached the implied covenant of good faith and fair dealing by (i) breaching the conduct, conflict of interest and confidentiality terms of the employment agreement as set forth above through a conspiracy, the Beget Asset Theft Enterprise, which was intended and designed to divert Plaintiff's existing and prospective customers to Plaintiff's competitors by improper means, including but not limited to, fraud, misappropriation, conversion, defamation and unfair and anti-competitive business practices for the benefit and profit of others and to the exclusion and damage of Plaintiff, and (ii) breaching the conflict of interest and confidentiality terms of the employment agreement as set forth it the Employee Handbook through said conspiracy with Co-Defendants intended and designed to transfer Plaintiff's private financial information to competitors for the benefit and profit of others and to the exclusion and damage of Plaintiff.  Because Breen, First Street Capital and Molger assisted Beget and Walsh in facilitating the acts of breach, they are similarly liable for the resulting harm.

194.    The wrongful acts of Beget and Walsh were undertaken for the purpose of (i) interfering with Plaintiff's enjoyment of the benefits of its relationships with existing and prospective customers including present and future revenues, reputation, goodwill and benefits accruing from such existing and prospective relationships, and (ii) misappropriating Plaintiff's property, present and future revenues, reputation, goodwill and benefits to themselves and their

COMPLAINT FOR DAMAGES, RESTITUTION        52
AND INJUNCTIVE RELIEF

1  Co-Defendants to the exclusion of Plaintiff.

2      195.   As a proximate result of the breach of implied covenant of good faith and fair
3  dealing under the Employment Contracts by Beget and Walsh, Plaintiff has suffered foreseeable,
4  actual, general, special and consequential damages in an amount not fully ascertained but to be
5  proven at trial and representing at least the lost and future revenues and profits associated with
6  servicing no less than seventy-five (75) existing customer accounts that had been diverted.
7  Plaintiff is entitled to an accounting by Defendants for any payments or compensation that
8  Defendants have received from Plaintiff's current and former customers. Plaintiff reserves the
9  right to seek leave of this Court to amend this Complaint to set forth the true and exact amount
10 thereof when this amount has been ascertained.

## FOURTEENTH CAUSE OF ACTION

## BREACH OF LOYALTY

### (Against Beget, Walsh, Breen, First Street Capital and Molger)

14     196.   Plaintiff alleges and incorporates by reference the allegations in the preceding
15 paragraphs.

16     197.   At all relevant times herein mentioned, Beget and Walsh, by virtue of their
17 employment with Plaintiff, owed Plaintiff a duty of loyalty. That duty included, but was not
18 limited to, a requirement that Beget and Walsh avoid any conflict of interest in their business
19 relationships, that they not misappropriate Plaintiff's confidential financial information or
20 customer information, lists and trade secrets, and that they not to compete with Plaintiff.

21     198.   Both Beget and Walsh willfully and intentionally breached their duty of loyalty to
22 Plaintiff by engaging in the conduct previously alleged. Because Breen, First Street Capital and
23 Molger assisted Beget and Walsh in facilitating the acts of breach, they are similarly liable for the
24 resulting harm.

25     199.   As a direct and proximate cause of the actions of Beget, Walsh, Breen, First Street
26 Capital and Molger, Plaintiff has sustained and will continue to sustain substantial damages in an
27 amount according to proof at trial. Alternatively, Plaintiff reserves the right to seek leave of this
28 Court to amend this Complaint to set forth the true and exact amount thereof when this amount

COMPLAINT FOR DAMAGES, RESTITUTION      53
AND INJUNCTIVE RELIEF

1    has been ascertained.

## FIFTEENTH CAUSE OF ACTION

## BREACH OF CONTRACT

### (Against Breen and First Street Capital)

200.    Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

201.    Plaintiff is informed and believes and based thereon alleges, that on or about January 22, 2009, Unishippers Global and Breen on behalf of himself and First Street Capital, entered into a written contract herein referred to as the Unishippers Franchise Agreement. (See, Exhibit "G", Unishippers' Freight Franchise Agreement and specifically, Appendix "B", Guarantee and Assumption of Obligations.)

202.    On or about October 22, 2008, Unishippers Global promulgated the relevant version of its "Shared Account Policy" which is part of the policies and procedures in the Operations Manual of Unishippers Global Logistics, LLC, and incorporated within the Unishippers Franchise Agreement between Unishippers Global and Breen and First Street Capital. (See, Exhibit "G", Appendix "I".)

203.    One of the purposes of the "Shared Account Policy" is to address situations where one franchisee has a unique connection with a *prospective* customer located in another Local Franchisee's exclusive marketing territory. In an effort to allow uniquely positioned foreign franchisees to exploit such potential opportunities without undermining the Local Franchisees' exclusive territorial rights, the policy provides for the uniquely-connected and local franchisees to split the paid gross margins generated from any sales. To set up a shared account, the uniquely-connected franchisee pursuing the prospect must first confirm the account is not an active Unishippers customer, and then complete and send to the Franchisor an account request form. Once the shared account is set up, a default margin split of 90/10 is used to distribute the paid gross margin between the foreign franchise that sold the account and the local franchise.

204.    The "Shared Account Policy" further provides that "Franchisees that do not follow the process outlined in this Policy may be subject to the Franchisor requiring the Franchisee to

COMPLAINT FOR DAMAGES, RESTITUTION    54
AND INJUNCTIVE RELIEF

1    pay appropriate sums to the Local Franchisee and may be subject to the breach and termination

2    provisions of the applicable franchise agreement."

3         205.   Additionally, under the Unishippers Franchise Agreement, Breen and First Street

4    Capital acknowledge and agree to protect, and treat as confidential trade secrets, certain

5    "Proprietary" and "Marketing" information to which they gain access as a result of said

6    agreement and relationship, including, but not limited to, customers' and carriers' information,

7    names, addresses, telephone numbers, and other identifying information, information regarding

8    customers' and carriers' needs, requirements, rate and price information and financial

9    information. (See, Exhibit "G", § 4.05, "Protection of Information".) Said agreement specifically

10   notes that disclosure of such protected information could be used to compete and significantly

11   injure other Franchisees.

12        206.   By virtue of being the Franchisee of Unishippers Global enjoying exclusive

13   territorial marketing rights to the City and County of San Francisco, the County of Fresno and the

14   Cities of Stockton and Modesto, and by the terms of the Unishippers Franchise Agreement

15   between Unishippers Global and Breen and First Street Capital, which includes the Shared

16   Account Policy and terms regarding the Protection of Information, Plaintiff is informed and

17   believes and based thereon alleges, that said agreement was made for Plaintiff's benefit and that

18   Plaintiff is an intended third party beneficiary of the said agreement and policies and entitled to

19   enforce their terms.

20        207.   Plaintiff if informed and believes and based thereon alleges, that from March 2009

21   to the present, Breen and First Street Capital repeatedly breached the Unishippers' Franchise

22   Agreement in myriad ways including, but not limited to, (1) selling products and services to

23   Plaintiff's customers and failing to distribute to Plaintiff any share of the paid gross margin owed

24   to it under the Shared Account Policy, (2) entering false customer information into the UONE

25   database in order to circumvent margin sharing with Plaintiff; and (3) violating and undermining

26   the "Protection of Information" provisions of said agreement by improperly using confidential

27   information to injure Plaintiff.

28        208.   Plaintiff if informed and believes and based thereon alleges, that Unishippers

COMPLAINT FOR DAMAGES, RESTITUTION          55
AND INJUNCTIVE RELIEF

Global fulfilled all of its obligations under the Franchise Agreement, or was excused from performing any unperformed acts as a result of the actions of Breen and First Street Capital.

209.     As a proximate result of Breen and First Street Capital's breach of the Franchise Agreement and its Shared Account Policy, Plaintiff has lost the benefits of an untold number of accounts representing an uncertain amount of revenues, sales and profits to which it is entitled. Such sums will be proven at trial. Alternatively, Plaintiff reserves the right to seek leave of this Court to amend this Complaint to set forth the true and exact amount thereof when such amount has been ascertained.

210.     Plaintiff is informed and believes and based thereon alleges, that Defendants have not only lost, destroyed or appropriated an untold number of Plaintiff's accounts, but they knowingly and willfully have used, and continue to use, the information in the confidential customer lists in violation of their Franchise Agreement with Unishippers Global.

## SIXTEENTH CAUSE OF ACTION

## INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

## (Breen, First Street Capital, Molger, Triandafilou, Newburyport, Voxx, and Movement)

211.     Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

212.     From March 2009 through June 2009, there existed exclusive employment agreements between Plaintiff and Beget and Walsh as set forth above.

213.     Plaintiff is informed and believes and based thereon alleges, that at all relevant times Breen, First Street Capital, Molger, Triandafilou, Newburyport, Voxx, and Movement each knew of the Plaintiff's exclusive employment agreements with Beget and Walsh.

214.     Plaintiff is informed and believes and based thereon alleges, that Breen, First Street Capital and Molger, Triandafilou, Newburyport, Voxx, and Movement each intentionally disrupted the performance of, prevented performance of, or made more expensive the performance of the exclusive employment agreements between Plaintiff and Beget and Walsh by, among other things:

- conspiring with Beget and Walsh to divert Plaintiff's customers to themselves;

COMPLAINT FOR DAMAGES, RESTITUTION          56
AND INJUNCTIVE RELIEF

- conspiring with Beget and Walsh to convert and misappropriate Plaintiff's confidential financial information, customer information and trade secrets;

- negotiating and entering into employment agreements with Beget, Walsh and Monkey Logistics;

- negotiating and entering into financial agreements with Beget, Walsh and Monkey Logistics, knowing that Monkey Logistics' purpose was to facilitate and exploit Beget and Walsh's diversion of customers from Plaintiff.

215.   As a proximate result of Defendants' disruptive conduct, the Plaintiff was harmed by the loss of no less than seventy-five (75) customer accounts, by lost past and future sales associated with those accounts, by disclosure of Plaintiff's confidential financial information, and by loss of two of Plaintiff's most successful salespersons, altogether representing damages in a sum to be proven at trial. Alternatively, Plaintiff reserves the right to seek leave of this Court to amend this Complaint to set forth the true and exact amount thereof when such amount has been ascertained. Plaintiff is also entitled to an accounting by Defendants for any payments or compensation that Defendants have received from Plaintiff's current and former customers.

216.   Plaintiff is further informed and believes and based thereon alleges, that during the period from March 2009 through June 2009, there existed a certain, but currently unknown, number of contracts between Plaintiff and certain Plaintiff's customers for shipping and freight services. For each of these contracts, Plaintiff had provided for the customer's shipping and freight services, but had not yet been compensated by the customers.

217.   Plaintiff is informed and believes and based thereon alleges, that Defendants Beget, Breen and First Street Capital knew of the existence of these certain, but currently unknown, number of contracts with outstanding amounts due to Plaintiff.

218.   Plaintiff is informed and believes and based thereon alleges, that during the period from March 2009 to the present, in furtherance of Defendants' multi-faceted scheme to divert Plaintiff's customers to Co-Defendants, Defendants Beget, Breen and First Street Capital informed these certain, but currently unknown, number of customers with outstanding amounts

COMPLAINT FOR DAMAGES, RESTITUTION          57
AND INJUNCTIVE RELIEF

1    owed to Plaintiff, that if they switched their business to Breen and First Street Capital, those

2    customers could still obtain Unishipper's special pricing on future shipping and freight through

3    First Street Capital, and did not have to pay Plaintiff the outstanding amounts it was owed.

4         219.    Plaintiff is informed and believes and based thereon alleges, that Defendants

5    intentionally disrupted the performance of, prevented performance of, or made more expensive

6    the performance of the services contracts between Plaintiff and said customers.

7         220.    As a proximate result of Defendants' disruptive conduct, the Plaintiff was harmed

8    by the loss of (i) a currently uncertain number of customer accounts and (ii) outstanding amounts

9    owed for services provided. Such damages represent sums to be proven at trial. Alternatively,

10   Plaintiff reserves the right to seek leave of this Court to amend this Complaint to set forth the true

11   and exact amount thereof when such amount has been ascertained.

12        221.    The aforementioned conduct of the Defendants was an intentional attempt to

13   deprive the Plaintiff of property or legal rights or otherwise causing injury, and was despicable

14   conduct that subjected the Plaintiff to a cruel and unjust hardship in conscious disregard of

15   Plaintiff's rights, so as to justify an award of exemplary and punitive damages.

16                               **SEVENTEENTH CAUSE OF ACTION**

17   **INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS**

18                                    **(All Defendants)**

19

20        222.    Plaintiff alleges and incorporates by reference the allegations in the preceding

21   paragraphs.

22        223.    Prior to June 2009, Plaintiff and no less than approximately seventy-five (75) of its

23   existing customers were in economic relationships wherein Plaintiff provided third party logistics

24   shipping and freight reselling services to said customers.

25        224.    Plaintiff is informed and believes and based thereon alleges, that since March

26   2009, some number of currently unidentified prospective customers located both in and outside of

27   Plaintiff's exclusive Unishippers Global marketing territories would have entered into economic

28   relations wherein Plaintiff would have provided third party logistics shipping and freight reselling

COMPLAINT FOR DAMAGES, RESTITUTION        58
AND INJUNCTIVE RELIEF

1    services to said existing customers, but for the improper actions of Defendants.

2    225.    Plaintiff is informed and believes and based thereon alleges, that Defendants

3    Beget, Walsh, Breen, First Street Capital, Molger, Monkey Logistics, Triandafilou, Newburyport,

4    Voxx, and Movement each knew of Plaintiff's existing relationships with said customers and

5    prospective customers.

6    226.    Defendants Beget and Walsh were employed by Plaintiff during the period

7    between March 2009 and June 2009, and during their employment had supervised said existing

8    customers' accounts as well as solicited an unknown number of said prospective customers.

9    227.    Plaintiff is informed and believes and based thereon alleges, that Defendants

10   Beget, Walsh, Breen, First Street Capital, Molger, Monkey Logistics, Triandafilou, Newburyport,

11   Voxx, and Movement, acting in concert and as agents of one another, and intending to disrupt

12   said existing and prospective customer relationships, engaged in wrongful conduct including, but

13   not limited to, fraud, misrepresentation, misappropriation of confidential client lists and financial

14   information, breach of contract, breach of loyalty, defamation and unfair business practices,

15   unlawful competition and conspiracy.

16   228.    Plaintiff is informed and believes and based thereon alleges, that as a proximate

17   result of Defendants' actions, said existing and prospective relationships were disrupted by the

18   loss of an estimated seventy-five (75) of Plaintiff's customer accounts that were managed and

19   diverted by Beget and Walsh and some currently unknown number of unidentified prospective

20   customers that Beget and Breen solicited and diverted to their Co-Defendants.

21   229.    Plaintiff is informed and believes and based thereon alleges, that Defendants'

22   disruptions to said relationships between the Plaintiff and said existing customers damaged the

23   Plaintiff in a sum to be proven at trial. Plaintiff reserves the right to seek leave of this Court to

24   amend this Complaint to set forth the true and exact amount thereof when such amount has been

25   ascertained. Plaintiff is also entitled to an accounting by Defendants for any payments or

26   compensation that Defendants have received from Plaintiff's current and former customers.

27   230.    Plaintiff is informed and believes and based thereon alleges, that Defendants'

28   disruptions to said relationships between the Plaintiff and prospective customers damaged the

COMPLAINT FOR DAMAGES, RESTITUTION          59
AND INJUNCTIVE RELIEF

1     Plaintiff in an unknown sum of money to be proven at trial. Plaintiff reserves the right to seek

2     leave of this Court to amend this Complaint to set forth the true and exact amount thereof when

3     such amount has been ascertained.

4        231.     Plaintiff is informed and believes and based thereon alleges, that the

5     aforementioned conduct of the Defendants was an intentional attempt to deprive the Plaintiff of

6     property or legal rights or otherwise causing injury, and was despicable conduct that subjected

7     Plaintiff to a cruel and unjust hardship in conscious disregard of Plaintiff's rights, so as to justify

8     an award of exemplary and punitive damages.

9        232.     Plaintiff is informed and believes and based thereon alleges, that Defendants

10     threaten to, and unless restrained will, disrupt other contracts or business relationships, between

11     Plaintiff and its existing customers, whose accounts Defendants also formerly supervised during

12     the period of their employment with Plaintiff, to Plaintiff's great and irreparable injury, for which

13     damages would not afford adequate relief, in that they would not completely compensate for the

14     injury to Plaintiff's business reputation and goodwill.

15                          **EIGHTEENTH CAUSE OF ACTION**

16     **NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS**

17                                  **(All Defendants)**

18        233.     Plaintiff alleges and incorporates by reference the allegations in the preceding

19     paragraphs.

20        234.     Prior to June 2009, Plaintiff and no less than approximately seventy-five (75) of its

21     existing customers were in economic relationships wherein Plaintiff provided third party logistics

22     shipping and freight reselling services to said customers.

23        235.     Plaintiff is informed and believes and based thereon alleges, that since March

24     2009, some number of currently unidentified prospective customers located in Plaintiff's

25     exclusive Unishippers Global marketing territories would have entered into economic relations

26     wherein Plaintiff would have provided third party logistics shipping and freight reselling services

27     to said existing customers, but for the improper actions of Defendants.

28        236.     Plaintiff is informed and believes and based thereon alleges, that Defendants

COMPLAINT FOR DAMAGES, RESTITUTION      60
AND INJUNCTIVE RELIEF

1    Beget, Walsh, Breen, First Street Capital, Molger, Monkey Logisitcs, Triandafilou,

2    Newburyport, Voxx, and Movement each knew, or should have known, of Plaintiff's

3    relationships with said customers and prospective customers.

4        237.    Defendants Beget and Walsh were employed by Plaintiff during the period

5    between March 2009 and June 2009, and during their employment had supervised said existing

6    customers' accounts as well as solicited an unknown number of said prospective customers.

7        238.    Plaintiff is informed and believes and based thereon alleges, that Defendants

8    Beget, Walsh, Breen, First Street Capital, Molger, Monkey Logisitcs, Triandafilou, Newburyport,

9    Voxx, and Movement, acting in concert and as agents of one another, and in reckless disregard to

10   disruption of said existing and prospective customer relationships, engaged in wrongful conduct

11   including, but not limited to, fraud, misrepresentation, misappropriation of confidential client lists

12   and financial information, breach of contract, breach of loyalty, defamation and unfair business

13   practices, unlawful competition and conspiracy.

14       239.    Plaintiff is informed and believes and based thereon alleges, that as a proximate

15   result of Defendants' failure to use reasonable care, those said existing and prospective

16   relationships were disrupted and Plaintiff lost no less than seventy-five (75) existing customer

17   relationships and an unknown number of prospective customer relationships.

18       240.    Plaintiff is informed and believes and based thereon alleges, that Defendants'

19   disruptions to said existing and prospective relationships between the Plaintiff and its customers

20   damaged the Plaintiff in an unknown sum of money to be proven at trial. Plaintiff reserves the

21   right to seek leave of this Court to amend this Complaint to set forth the true and exact amount

22   thereof when such amount has been ascertained. Plaintiff is also entitled to an accounting by

23   Defendants for any payments or compensation that Defendants have received from Plaintiff's

24   current and former customers.

25   ///

26   ///

27   ///

28   ///

COMPLAINT FOR DAMAGES, RESTITUTION          61
AND INJUNCTIVE RELIEF

1

## NINETEENTH CAUSE OF ACTION

## BUSINESS AND PROFESSIONS CODE § 17045 & 17048 - UNFAIR BUSINESS PRACTICES

### (Against Beget, Walsh, Breen and First Street Capital)

241.    Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

242.    Plaintiff is informed and believes and on that basis alleges that every item that is shipped through a freight carrier is given a classification number. This number is a tool that carriers use in order to determine what they will charge their customer for moving that item. Several factors are used to determine a given item's classification, including, but not limited to, what the item is, what it is made of, how it is packaged, its weights and dimensions, how easily the item is moved and what the liability is for moving the item (whether the item is cheap or expensive). If it becomes known to a carrier that a customer's freight classification is not correct, the freight carrier will invariably rebill the customer for the proper amount when the shipment is completed. This rebilling is typically referred to as a reclassification fee.

243.    Plaintiff is informed and believes and based thereon alleges, that as part of their multi-faceted scheme to divert Plaintiff's customers, Beget, Walsh, Breen and First Street Capital used secret rebates and/or unearned discounts by secretly promising to waive any shipping or freight reclassification fees assessed against those specific customers. Such waivers are virtually unprecedented in the third party logistics shipping and freight reselling industry, are designed to undermine competition and are unearned by the customer. Such waivers therefore constitute secret rebates and/or unearned discounts in violation of Cal. Bus. & Prof. Code § 17045 and Defendants' collusion to effectuate such violations constitutes a violation of Cal. Bus. & Prof. Code § 17048.

244.    Plaintiff is informed and believes and based thereon alleges, that Defendants performed the above-mentioned acts for the purpose of injuring Plaintiff.

245.    As a proximate result of the above-mentioned acts of Defendants, Plaintiff has lost a currently unknown number of sales, revenues, profits as well as existing and prospective

COMPLAINT FOR DAMAGES, RESTITUTION     62
AND INJUNCTIVE RELIEF

1    customer accounts to be proven at trial. Furthermore, Plaintiff is entitled to treble damages and

2    attorneys' fees as a result of Defendants' unfair business practices. The sums of such damages

3    will be proven at trial. Plaintiff reserves the right to seek leave of this Court to amend this

4    Complaint to set forth the true and exact amount thereof when such amount has been ascertained.

## TWENTIETH CAUSE OF ACTION

### BUSINESS AND PROFESSIONS CODE § 17200 - UNFAIR COMPETITION

### (Against Beget, Walsh, Breen, First Street Capital and Molger)

8    246.    Plaintiff alleges and incorporates by reference the allegations in the preceding

9    paragraphs.

10    247.    Plaintiff is informed and believes and based thereon alleges, that Defendants,

11    acting in concert and as agents for one another, conspired and, in fact, succeeded in diverting

12    Plaintiff's customers to themselves and each other through a variety of schemes including, but not

13    limited to, sabotaging Plaintiff's computers, misappropriating and converting Plaintiff's

14    confidential customer information and trade secrets, defamation of Plaintiff in written and verbal

15    communications with Plaintiff's customers, and promising Plaintiff's customers secret rebates

16    and/or unearned discounts.

17    248.    Plaintiff is informed and believes and based thereon alleges, that Defendants,

18    acting in concert and as agents for one another, also obtained, through fraud and breach of

19    contract, and shared amongst each other, Plaintiff's confidential financial information, including

20    but not limited to, Plaintiff's detailed Profit and Loss statements and historical graphs depicting

21    Plaintiff's financial condition over the past several years.

22    249.    Plaintiff is informed and believes and based thereon alleges, that Defendants,

23    acting in concert and as agents for one another, have not only lost, destroyed or appropriated

24    Plaintiff's confidential customer information, lists and trade secrets relating to an estimated

25    seventy-five (75) customers, but they knowingly and willfully have used and continue to use, said

26    information, lists and trade secrets.

27    250.    Plaintiff is informed and believes and based thereon alleges, that Defendants'

28    wrongful conduct in defaming Plaintiff and in misappropriating Plaintiff's confidential client list

COMPLAINT FOR DAMAGES, RESTITUTION          63
AND INJUNCTIVE RELIEF

McNAMARA, DODGE, NEY, BEATTY, SLATTERY, PFALZER, BORGES & BROTHERS LLP
ATTORNEYS AT LAW
P. O  BOX 5288, WALNUT CREEK, CA 94596
TELEPHONE: (925) 939-5330

1    by solicitation, piracy and deceit of Plaintiff's customers, unless and until enjoined and restrained

2    by order of this Court, will cause great harm and irreparable injury to Plaintiff's identity,

3    reputation and goodwill, causing the loss of valuable customers and profits and threatening to

4    complete destruction of its business.

5        251.    No adequate remedy exists at law for the injuries suffered by Plaintiff herein,

6    insofar as further harm will result to Plaintiff from Defendants' wrongful acts. If this Court does

7    not grant injunctive relief of the type and for the purpose specified herein, Plaintiff will be

8    irreparably damaged. Therefore, Plaintiff requests the following injunctive relief: an order

9    enjoining Defendants from using Plaintiff's customer lists, from soliciting or serving any and all

10   customers on said customer lists, and requiring that Defendants destroy all versions of Plaintiff's

11   customer lists and confidential financial information in their possession.

12       252.    Plaintiff is informed and believes and based thereon alleges, that Defendants,

13   acting in concert and as agents for one another, performed the above-mentioned acts for the

14   purpose of injuring Plaintiff and competition in Plaintiff's industry.

15       253.    Plaintiff is informed and believes and based thereon alleges, that Defendants' acts

16   hereinabove alleged are acts of unfair competition within the meaning of California Business and

17   Profession Code section 17203. Plaintiff is informed and believes that Defendants will continue

18   to do those acts unless the Court orders the Defendants to cease and desist.

19       254.    As a proximate result of the above-mentioned acts of Defendants, Plaintiff lost not

20   less than seventy-five (75) of its customer accounts, all past and future profits associated with

21   such accounts since Defendants began their improper conduct, all the benefits of its employment

22   contracts with Beget and Walsh, and, upon Plaintiff's information and belief, an untold number of

23   accounts associated with prospective customers that were diverted to competitors, as well as the

24   confidentiality of its own private financial information. Plaintiff is entitled to relief, including

25   full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits

26   that may have been obtained by Defendants as a result of such unfair business acts or practices.

27   Such sums are currently unknown but will be proven at trial. Plaintiff reserves the right to seek

28   leave of this Court to amend this Complaint to set forth the true and exact amount thereof when

COMPLAINT FOR DAMAGES, RESTITUTION        64
AND INJUNCTIVE RELIEF

1  such amount has been ascertained. Plaintiff is also entitled to an accounting by Defendants for

2  any payments or compensation that Defendants have received from Plaintiff's current and former

3  customers.

4  255.  Plaintiff is also entitled to attorney's fees and costs necessary for the prosecution

5  of this action.

## TWENTY-FIRST CAUSE OF ACTION

### TRADE LIBEL

#### (Against Beget, Walsh, Breen and First Street Capital)

9  256.  Plaintiff alleges and incorporates by reference the allegations in the preceding

10  paragraphs.

11  257.  Since 2004, Plaintiff has provided third party logistical shipping and freight

12  services nationwide. During the relevant time period, March 2009 to the present, Plaintiff's

13  exclusive marketing territories under its Franchise Agreement with Unishippers Global included

14  the City and County of San Francisco, the County of Fresno and the Cities of Stockton and

15  Modesto.

16  258.  Plaintiff is informed and believes and based thereon alleges, that from March 2009

17  through the present, Beget, Walsh and Breen willfully, without justification and without privilege

18  published emails and other written communications to Plaintiff's customers which made

19  defamatory statements including, but not limited to, statements to the effect that Plaintiff had

20  raised it prices for those customers, and/or Plaintiff was about to raise its prices for those

21  customers, and/or that Plaintiff's pricing was no longer competitive as compared to Defendants'

22  pricing.

23  259.  Plaintiff is informed and believes and based thereon alleges, that in fact, Beget and

24  Walsh conspired with other Defendants to divert Plaintiff's customers by improperly accessing,

25  sabotaging and adjusting Plaintiff's confidential pricing system within its protected computer

26  database, Freight Manager, without the permission or knowledge of Plaintiff's management, in

27  order to artificially inflate Plaintiff's rates and price quotes for certain customers. Plaintiff is

28  further informed and believes and thereon alleges, that Beget and Walsh were acting as agents of

COMPLAINT FOR DAMAGES, RESTITUTION      65
AND INJUNCTIVE RELIEF

1    Co-Defendants and Co-Defendants aided and abetted Beget and Walsh's efforts to carry out the

2    herein alleged schemes.

3        260.    Plaintiff is informed and believes and based thereon alleges, that from March 2009

4    to the present, Beget also willfully, without justification and without privilege published emails to

5    Plaintiff's customers which made statements to the effect that Plaintiff had "screwed" Beget out

6    of money to which he was entitled and that Plaintiff had been dishonest in its dealings with Beget.

7        261.    Plaintiff is informed and believes and based thereon alleges, that the Defendants'

8    statements were made of and concerning the Plaintiff's above-described business and were so

9    understood by those who read the statements.

10       262.    The Defendants' statements disparaged Plaintiff's above-described business in

11   myriad ways, including but not limited to, by suggesting that Plaintiff's pricing and services were

12   not competitive with the market and by suggesting that Plaintiff would take advantage of its

13   customers by unilaterally and surreptitiously adjusting customers' pricing without any warning to

14   the customers.

15       263.    Beget's statements also disparaged Plaintiff's above-described business in that

16   they suggested that Plaintiff was dishonest towards its employees.

17       264.    Plaintiff is informed and believes and based thereon alleges, that the disparaging

18   statements are false as they apply to the Plaintiff.  In fact, Defendants manufactured this inflated

19   pricing scheme through sabotaging Plaintiff's computers in order to further their conspiracy with

20   Co-Defendants to divert customers away from Plaintiff.

21       265.    The Defendants' statements are libelous on their face.  They clearly expose

22   Plaintiff to hatred, contempt, ridicule, and obloquy because they suggest that Plaintiff is dishonest

23   and unreliable, both in its dealings with customers and employees.

24       266.    Plaintiff is informed and believes and based thereon alleges, that such emails were

25   read by multiple current and former customers throughout the country.  Plaintiff will seek

26   permission to amend its complaint upon learning the identities of the said existing and

27   prospective customers.

28       267.    As a proximate result of the above-described publication, Plaintiff's former

COMPLAINT FOR DAMAGES, RESTITUTION        66
AND INJUNCTIVE RELIEF

1    customers have been diverted to other service providers, including to Defendants themselves, and

2    prospective customers have been deterred from patronizing Plaintiff's business and from

3    otherwise dealing with Plaintiff. Plaintiff has thereby suffered injury to Plaintiff's business and

4    pecuniary loss in the sum to be proven at trial. Plaintiff reserves the right to seek leave of this

5    Court to amend this Complaint to set forth the true and exact amount thereof when such amount

6    has been ascertained.

7        268.   Plaintiff is informed and believes and based thereon alleges, that the above-

8    described publications were published by Beget and Walsh with malice and/or oppression and/or

9    fraud in that the statements were untrue and designed to facilitate the diversion of Plaintiff's

10   customers for the purposes of damaging and destroying Plaintiff and thus Plaintiff seeks an award

11   of punitive damages.

**TWENTY-SECOND CAUSE OF ACTION**

**SLANDER**

**(Against Beget, Walsh, Breen and First Street Capital)**

15       269.   Plaintiff alleges and incorporates by reference the allegations in the preceding

16   paragraphs.

17       270.   Plaintiff is informed and believes and based thereon alleges, that from March 2009

18   through the present, Defendants Beget, Walsh and Breen made defamatory statements including,

19   but not limited to, statements to Plaintiff's existing and prospective customers to the effect that

20   Plaintiff had raised its prices for those customers, and/or Plaintiff was about to raise its prices for

21   those customers, and/or that Plaintiff's pricing was no longer competitive.

22       271.   Plaintiff is informed and believes and based thereon alleges, that the words were

23   reiterated by Beget, Walsh and Breen and heard by a currently unknown number of Plaintiff's

24   existing and prospective customers as well as several other persons whose names are not known

25   to the Plaintiff. Plaintiff will seek permission to amend its complaint upon learning the identities

26   of the said existing and prospective customers.

27       272.   Plaintiff is further informed and believes and thereon alleges that Beget and Walsh

28   were acting as agents of Co-Defendants and Co-Defendants aided and abetted Beget and Walsh's

COMPLAINT FOR DAMAGES, RESTITUTION          67
AND INJUNCTIVE RELIEF

McNAMARA, DODGE, NEY, BEATTY, SLATTERY, PFALZER, BORGES & BROTHERS LLP
ATTORNEYS AT LAW
P.O. BOX 5288, WALNUT CREEK, CA 94596
TELEPHONE: (925) 939-5330

1    efforts to carry out the herein alleged schemes.

2    273.   Plaintiff is informed and believes and based thereon alleges, that from March 2009

3    through the present, Beget also willfully, without justification and without privilege made verbal

4    statements to Plaintiff's customers to the effect that Plaintiff had "screwed" Beget out of money

5    to which he was entitled and that Plaintiff had been dishonest in its dealings with Beget.

6    274.   These above-mentioned statements were slanderous per se because they tend to

7    injure the Plaintiff in its profession or trade or business by imputing to it characteristics of

8    dishonesty and unreliability in that Plaintiff would take advantage of its customers by unilaterally

9    and surreptitiously adjusting customers' pricing without any warning.

10    275.   Defendants' statements also disparaged Plaintiff's above-described business in that

11    they suggested that Plaintiff was dishonest towards its employees.

12    276.   Plaintiff is informed and believes and based thereon alleges, that the words uttered

13    regarding Plaintiff's pricing and competitiveness were false statements because Plaintiff's said

14    customer pricing was not Plaintiff's true customer pricing. In fact, upon information and belief,

15    Beget and Walsh had improperly accessed, sabotaged and/or manipulated Plaintiff's customer

16    pricing system in Freight Manager to reflect artificially higher pricing for certain customers in

17    order to facilitate their diversion of said customers to the Co-Defendants.

18    277.   The words uttered regarding Plaintiff having "screwed" Beget out of money to

19    which he was entitled was a knowingly false statement imputing dishonest dealings by Plaintiff

20    arising out of failed efforts between Plaintiff and Beget to enter into a stock purchase agreement.

21    No stock purchase agreement was ever executed between the parties, and Plaintiff did not fail or

22    refuse to pay Beget any sums to which he was legally entitled.

23    278.   As a result of the above-described words, Plaintiff as suffered general damages to

24    its reputation in a sum according to proof at trial. Plaintiff reserves the right to seek leave of this

25    Court to amend this Complaint to set forth the true and exact amount thereof when such amount

26    has been ascertained.

27    279.   As a further proximate result of the above-described words, Plaintiff has suffered

28    the following special damages including injury to its property, business, trade, and profession

COMPLAINT FOR DAMAGES, RESTITUTION    68
AND INJUNCTIVE RELIEF

1  resulting in the permanent loss of a currently uncertain number of customer accounts all to its

2  injury in a sum according to proof at trial. Plaintiff reserves the right to seek leave of this Court

3  to amend this Complaint to set forth the true and exact amount thereof when such amount has

4  been ascertained.

5  280.    Additionally, the above-described words were spoken by the Beget, Walsh and

6  Breen with malice and/or oppression and/or fraud in that they were done with the specific purpose

7  of harming Plaintiff and depriving Plaintiff of the benefits of its confidential customer accounts

8  and reputation and goodwill in the communities in which it maintained business, and thus an

9  award of exemplary and punitive damages is justified.

## TWENTY-THIRD CAUSE OF ACTION

### CONSPIRACY

### (All Defendants)

13  281.    Plaintiff alleges and incorporates by reference the allegations in the preceding

14  paragraphs.

15  282.    Between March 2009 and June 2009 Defendants Beget and Walsh were employed

16  by Plaintiff as salespersons assigned the duties and responsibilities of selling Plaintiff's third

17  party logistics shipping and freight reselling services to customers in and outside of Plaintiff's

18  Unishippers Global marketing territories.

19  283.    Plaintiff is informed and believes and based thereon alleges, that from March 2009

20  through the present, Defendants Beget, Walsh, Breen, First Street Capital, Molger, Monkey

21  Logistics, Triandafilou, Newburyport, Voxx, and Movement, acting in concert and as agents for

22  one another, knowingly and willfully conspired and agreed among themselves to damage the

23  Plaintiff by:

24  (i)    attempting to recruit and recruiting Plaintiff's employees to start a new company

25  in competition in with Plaintiff;

26  (ii)    financing and starting a new company for the purpose of competing with Plaintiff;

27  (iii)    transferring Plaintiff's confidential customer contact information and trade secrets

28  to Co-Defendant competitors;

COMPLAINT FOR DAMAGES, RESTITUTION          69
AND INJUNCTIVE RELIEF

1    (iv)    transferring Plaintiff's confidential customer pricing and other information and

2    trade secrets to Co-Defendant competitors;

3    (v)    giving Plaintiff's existing customers new account numbers and identifications as

4    well as new contact information, unbeknownst to Plaintiff, in order to route such customers to

5    themselves and their Co-Defendants, and in order to cover their tracks and facilitate the diversion

6    of those customers;

7    (vi)    obtaining through fraud Plaintiff's confidential and highly-sensitive financial

8    information and disclosing such directly to Breen, including, but not limited to, the 2008 Profit

9    and Loss statement for Plaintiff's San Francisco Territory, the 2008 Profit and Loss statement for

10   Plaintiff's combined territories, and graphs depicting Plaintiff's monthly gross margins from

11   January 2007 through March 2009;

12   (vii)    maliciously making one or more defamatory statements about Plaintiff to

13   Plaintiff's customers;

14   (viii)    accessing without authorization and manipulating and sabotaging Plaintiff's

15   Freight Manager system's computer database system, without Plaintiff's knowledge or consent,

16   by unlawfully altering Plaintiff's pricing system for specific customers, particularly customers in

17   the San Francisco Territory, in order for it to appear to such customers that Plaintiff had raised the

18   rates for its services above the rates provided by Defendants;

19   (ix)    depriving it of the benefits of its confidential customer relationships by engaging

20   in unfair business practices, unfair competition and interference of contractual relations and

21   prospective economic relations;

22   (x)    depriving it of the benefits of its employment contracts with Beget and Walsh by

23   inducing Beget and Walsh to breach such contracts, their duties of loyalty and their covenants of

24   good faith and fair dealing;

25   (xi)    encouraging Plaintiff's customers to not pay Plaintiff outstanding amounts owed to

26   Plaintiff and obtain services through Defendants.

27   284.    Plaintiff is informed and believes and based thereon alleges, that pursuant to such

28   conspiracy, and in furtherance thereof, Defendants, acting in concert and as agents for the others,

COMPLAINT FOR DAMAGES, RESTITUTION        70
AND INJUNCTIVE RELIEF

1  during the period of March 2009 through the present, did wrongfully commit the acts herein

2  alleged.

3      285.   Plaintiff is informed and believes and based thereon alleges, that as a proximate

4  result of Defendants' wrongful acts described in the preceding paragraphs, Plaintiff was harmed

5  by, among other things, the loss of confidential financial information that improperly disclosed to

6  competitors, the diversion no less than seventy-five (75) existing customer accounts to its

7  competitors, the diversion of some currently unknown number of prospective customers accounts

8  to Plaintiff's competitors, and Plaintiff's loss of its employment relationships with two of its most

9  successful salespersons and the loss of its goodwill and reputation.

10      286.   Plaintiff is informed and believes and based thereon alleges, that from March 2009

11  through the present, Defendants Beget, Walsh, Breen, First Street Capital, Molger, Triandafilou,

12  Newburyport, Voxx, and Movement knowingly and willfully performed acts in furtherance of the

13  conspiracy including, but not limited to, plans and execution of the following:

14      (i)   Beget and Walsh fraudulently obtained and disclosed Plaintiff's private financial

15  information between themselves as well as to Breen and First Street Capital;

16      (ii)   Beget, Walsh, Breen, First Street Capital and Molger accessed, obtained,

17  misappropriated and converted Plaintiff's confidential customer information and trade secrets

18  without Plaintiff's permission in order to solicit Plaintiff's customers and divert such customers to

19  Plaintiff's competitors, namely Breen, First Street Capital and Molger;

20      (iii)   Beget, Walsh, Breen, First Street Capital and Molger solicited and diverted

21  Plaintiff's existing and prospective customers, among themselves;

22      (iv)   Beget, Walsh and Breen defamed Plaintiff, in written and verbal form, to existing

23  and prospective customers;

24      (v)   Beget, Walsh, Breen and First Street Capital, in order to facilitate efforts to divert

25  Plaintiff's existing and prospective customers, engaged unfair business practices, including but

26  not limited to, promising said customers secret rebates and/or unearned discounts, to wit, waivers

27  of reclassification fees;

28      (vi)   Beget formed Monkey Logistics, LLC, a Nevada company, for the purpose of

COMPLAINT FOR DAMAGES, RESTITUTION    71
AND INJUNCTIVE RELIEF

McNAMARA, DODGE, NEY, BEATTY, SLATTERY, PFALZER, BORGES & BROTHERS LLP
ATTORNEYS AT LAW
P. O. BOX 5288, WALNUT CREEK, CA 94596
TELEPHONE: (925) 939-5330

1    directly competing with Plaintiff for Plaintiff's own customers;

2    (vii)    Beget recruited Walsh to join in Defendants' conspiracy to damage Plaintiff;

3    (viii)   Breen, First Street Capital, Molger, Triandafilou, Newburyport, Voxx, and

4    Movement induced Beget and Walsh to breach their employment agreements and duties of

5    loyalty with Plaintiff by, among other things, negotiating and resolving to execute separate

6    employment contracts and/or financing agreements and arrangements either directly with Beget

7    and Walsh or through Monkey Logistics in order for Beget, Walsh and Monkey Logistics to

8    divert Plaintiff's existing and prospective customers to themselves and/or for Beget, Walsh and

9    Monkey Logistics to compete directly with Plaintiff.

10   287.    Plaintiff is further informed and believes and based thereon alleges, that during the

11   period from March 2009 through the present, Defendants agreements, actions and conspiracies to

12   divert Plaintiff's existing and prospective customers and misappropriate and convert Plaintiff's

13   confidential customer information to Breen, First Street Capital and Molger resulted in the loss of

14   not less than seventy-five (75) of Plaintiff's customer accounts. The sums of such damages will

15   be proven at trial. Plaintiff reserves the right to seek leave of this Court to amend this Complaint

16   to set forth the true and exact amount thereof when such amount has been ascertained. Plaintiff is

17   also entitled to an accounting by Defendants for any payments or compensation that Defendants

18   have received from Plaintiff's current and former customers.

19   288.    Plaintiff is further informed and believes and based thereon alleges, that

20   Defendants' above-stated agreements, actions and conspiracies also resulted in the loss of

21   Plaintiff's reputation and goodwill and its enjoyment of the benefits associated with the privacy

22   and confidentiality of its internal financial records. The sums of such damages will be proven at

23   trial. Plaintiff reserves the right to seek leave of this Court to amend this Complaint to set forth

24   the true and exact amount thereof when such amount has been ascertained.

25   289.    In doing these things herein alleged, defendants acted with malice, oppression, and

26   fraud, by willfully intending to cause injury to Plaintiff. Defendants were therefore guilty of

27   malice, oppression or fraud in conscious disregard of Plaintiff's rights, thereby warranting an

28   assessment of punitive damages in an amount appropriate to punish Defendants and deter others

COMPLAINT FOR DAMAGES, RESTITUTION          72
AND INJUNCTIVE RELIEF

1    from engaging in similar misconduct.

2                          **TWENTY-FOURTH CAUSE OF ACTION**

3                                  **INJUNCTIVE RELIEF**

4    **(Against Beget, Walsh, Breen, First Street Capital, Molger, Monkey Logistics, Triandafilou,**

5                       **Newburyport, Voxx, and Movement Logistics)**

6         290.    Plaintiff alleges and incorporates by reference the allegations in the preceding

7    paragraphs.

8         291.    As a result of the illegal and wrongful conduct alleged above, in the absence of

9    injunctive relief prohibiting Defendants, and each of them, from misappropriating Plaintiff's

10   confidential information and trade secrets and from continuing to engage in unfair competition

11   and interference as described above, Plaintiff has been and will be irreparably harmed.

12        292.    Furthermore, in the absence of permanent injunctive relief, Plaintiff has no

13   adequate remedy at law for the injuries that it has suffered and will continue to suffer.

14                                  **PRAYER FOR RELIEF**

15        WHEREFORE, the plaintiff prays judgment against Defendants as follows:

16        1.      For an award of restitution, unjust enrichment, general damages, actual damages,

17   statutory damages and compensatory damages according to proof at trial;

18        2.      For exemplary and punitive damages in an amount appropriate to punish

19   Defendant and deter others from engaging in similar misconduct according to proof at trial,

20   including but not limited to damages pursuant to Cal. Civ. Code § 3426.3;

21        3.      That Plaintiff be awarded treble damages together with its reasonable attorneys'

22   fees and costs pursuant to 15 U.S.C. § 1117(a), 18 U.S.C. § 1964(c) and Cal. Bus. & Prof. Code §

23   17086 according to proof at trial;

24        4.      For the value of the property converted according to proof at trial;

25        5.      For damages for time and money properly expended in pursuit of the converted

26   property according to proof at trial;

27        6.      For an accounting by Defendants for any payments or compensation that

28   Defendants have received from Plaintiff's current and former customers;

COMPLAINT FOR DAMAGES, RESTITUTION          73
AND INJUNCTIVE RELIEF

McNAMARA, DODGE, NEY, BEATTY, SLATTERY, PFALZER, BORGES & BROTHERS LLP
ATTORNEYS AT LAW
P.O. BOX 5288, WALNUT CREEK, CA 94596
TELEPHONE: (925) 939-5330

7.     That all gains, profits and advantages derived from Defendants' acts of misappropriation and other violations of law be deemed to be in constructive trust for the benefit of Plaintiff;

8.     For reasonable attorneys' fees;

9.     For a permanent injunction, enjoining all Defendants, and each of them, and their agents, servants and employees, and all persons acting under, in concert with or for them from engaging in the unlawful conduct described herein, including but not limited to, (1) using or disclosing any of Plaintiffs' proprietary information or trade secrets, (2) to return all copies of the confidential financial information, customer information and client lists, (3) from making any false misrepresentations to or otherwise harassing third parties concerning their business relationships with Plaintiff, and (4) from unfair competition;

10.    For costs of suit herein incurred;

11.    For such other and further relief as the court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on each of its claims for relief that are triable before a jury.

Dated: October 5, 2009                     MCNAMARA, DODGE, NEY, BEATTY, SLATTERY, PFALZER, BORGES & BROTHERS LLP


By: _____
J. Wesley Smith
Gary A. Watt
Christopher T. Lustig
Attorneys for Defendant
MERCARI, INC. DBA UNISHIPPERS


K:\MERI\5001 - Mercari v. Beget, Breen, et al\Pleadings\Final Complaint 10-2-09.doc

COMPLAINT FOR DAMAGES, RESTITUTION          74
AND INJUNCTIVE RELIEF